**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TAMMY THOMAS, as Next Friend of Benny Watts,** | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. CIV-25-366-GLJ** |
| **CHRIS ELLIOTT, Official capacity as Sheriff of Wagoner County, Oklahoma; SAINT FRANCIS HOSPITAL MUSKOGEE, INC.; CITY OF MUSKOGEE; WAGONER HOSPITAL AUTHORITY; and ANDY SIMMONS,** | ) | |
| **Defendants.** | ) | |

# ORDER

This matter comes before the Court on motions for partial and/or total dismissal by all remaining Defendants in this case. Plaintiff Tammy Thomas, the daughter and court-appointed guardian of her father Benny Watts, sues, *inter alia*, Chris Elliott in his official capacity as Sheriff of Wagoner County, Oklahoma ("Wagoner Sheriff"), alleging various Fourth and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983, arising out of Watts's incarceration at the Wagoner County Detention Center ("WCDC") from 2023-2025. Wagoner Sheriff filed a motion to dismiss all of Plaintiff's claims against him. For the reasons set forth below, the Court finds that Defendant Chris Elliott's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 37] is

GRANTED IN PART as to Counts 2 and 11, but otherwise DENIED as to Counts 1, 3, and 4.

## I. Procedural History

Plaintiff first filed this action on October 15, 2025, against Wagoner Sheriff. Docket No. 2. Prior to issuing service, Plaintiff filed an Amended Complaint, against Wagoner Sheriff and Saint Francis Hospital, Muskogee, Inc., in Muskogee, Oklahoma ("STFM"). Docket No. 6. On March 17, 2026, the parties consented to Magistrate Judge jurisdiction in this case. Docket No. 31, 28 U.S.C. § 636(c)(1), & Fed. R. Civ. P. 73(a). Both Defendants moved to dismiss the claims against them. Docket Nos. 13, 22. On March 16 2026, the Court invited Plaintiff to file a Second Amended Complaint, and she did so on March 25, 2026. Docket Nos. 34-35. Plaintiff's Second Amended Complaint named the Wagoner Sheriff and STFM, as well as The City of Muskogee ("Muskogee), the Oklahoma Department of Mental Health and Substance Abuse Services ("OKDMH") the Wagoner Hospital Authority d/b/a Wagoner Community Hospital ("WCH"), and Andy Simmons, in his official capacity as Sheriff of Muskogee County, Oklahoma ("Muskogee Sheriff"). All Defendants moved to dismiss. Docket Nos. 37, 38, 55, 58, 61, & 69. On June 18, 2026, Plaintiff dismissed OKDMH, and this Court denied OKDMH's motion to dismiss as moot. Docket Nos. 72-73. The motions by all remaining Defendants remain.

Plaintiff alleges eleven causes of action in her Second Amended Complaint, but only ten remain because Count 9 as to OKDMH was dismissed (Docket No. 72): (1) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to adequate medical care based on a systemic deficiency, as to **Wagoner Sheriff**; (2) § 1983

claim for deliberate indifference in violation of the Fourteenth Amendment to adequate medical care based on final policymaker liability, as to **Wagoner Sheriff**; (3) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to adequate medical care based on direct liabilty, as to **Wagoner Sheriff**; (4) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to adequate medical care based on indirect liability, as to **Wagoner Sheriff**; (5) common law negligence claims based on respondeat superior as to STFM; (6) negligent performance of a police function/excessive force in violation of the Oklahoma Governmental Tort Claims Act ("OGTCA"), as to the City of Muskogee; (7) § 1983 violation of the Fourth and Fourteenth Amendments based municipal liability claim under *Monell*[1] as to the City of Muskogee for excessive force and failure to train; (8) negligent medical care and hospital discharge in violation of the OGTCA, as to WCH; (10) § 1983 claim for violation of the Fourteenth Amendment based on deliberate indifference to serious medical needs pursuant to final policymaker, systemic deficiency, and affirmative policy liability, as to the Muskogee Sheriff; and (11) (pleading in the alternative to Count 5) negligent performance of a law enforcement function in violation of the OGTCA, as to **Wagoner Sheriff**. All parties now move to dismiss some or all of the claims against them. In this Order, the Court addresses the claims as to Wagoner Sheriff.

## II. Complaint Allegations

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Plaintiff asserts the following allegations on behalf of her father, Mr. Watts, an incapacitated person with a diagnosis of schizophrenia. Docket No. 35, p. 1, ¶ 1. Between December 28, 2023, and October 6, 2025, Watts was subject to the custody of the WCDC and the Wagoner Sheriff, and never evaluated by a physician or prescribed a plan of care. *Id.*, pp. 4-13, ¶¶ 15-107. Plaintiff alleges Watts's unmanaged and untreated serious mental health condition while at WCDC was known to every person who encountered him, and that staff failed to screen him upon arrival and consistently failed to provide treatment for his emergent and urgent health needs, including community-prescribed plans of care for his schizophrenia and type 2 diabetes. For example, Plaintiff alleges that during Watts's first month nursing staff took no action regarding his dangerously elevated blood glucose levels, in addition to elevated blood pressure and heart rate, until a nurse found his symptoms to be life-threatening and he was transferred to the local emergency department. He was discharged the following day back to WCDC with medical orders and prescriptions, but there is no record those medications were administered. He endorsed suicidality in February, and the nurse took no action, and Watts received little medical care through the end of August 2024.

On August 29, 2024, Watts was found unresponsive in his cell and transferred to WCH, but he was diagnosed with lethargy and sent back to WCDC until later that evening when he was transferred to STFM. He stayed there two days and was sent back to WCDC, where he received no nursing or mental heath care until September 21, 2024, for a vital signs check. This was performed again on October 23, 2024, at which time Watts had elevated blood glucose, blood pressure, and heart rate, and he had difficulty standing.

Plaintiff alleges the nursing staff documented these as normal, and no action was taken. A similar encounter happened on November 21, 2024.

After smearing feces in his cell on December 23, 2025, Watts was restrained and transferred for crisis stabilization at CREOKS Behavioral Health Services for 7 days, after which he was returned to the WCDC. Upon his return, he was given a medical screening, but no vitals were taken, including no blood glucose, and he was not given any form of medical care again until April 11, 2025, at which point he was recorded as refusing medical treatment and placed in isolation lockdown. He received no further medical care until June 7, 2025, when a medical assistant reported concerns about sepsis, but no action was taken until June 11, 2025, when he was taken to the WCH and returned to WCDC the same day and ordered to, *inter alia*, continue his medication. Still unmedicated and without treatment, Watts eventually developed decubitus ulcers. On October 6, 2025, the County obtained an order releasing Watts on his own recognizance, which states, "released on OR for transport to [STFM] to medically treat and find long term housing – if [STFM] release [Watts] from care, [Watts] to be returned to WCJ – [Watts is not] to be released to street." *Id.*, p. 13, ¶¶ 103-104. Based on this, Watts was transported to STFM.

Wagoner Sheriff did not station a deputy at STFM, and Watts was released on his own from STFM on October 7, 2025, at which point he began walking from Muskogee, Oklahoma, to Fort Gibson, Oklahoma, well over ten miles away. These events form the general basis for Plaintiff's allegations in Counts 1-4, and 11.

## III. Legal Standards

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557, 570 (2007)). Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555 (2007)); *see generally* Fed. R. Civ. P. 8(a)(2) (complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]").

"While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in h[is] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Thus, the appropriate inquiry is "'whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.'" *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement[.]" *Iqbal*, 556 U.S. at 678.

## IV. Analysis

The Wagoner Sheriff asserts Plaintiff fails to state a plausible claim for relief as to his § 1983 and state law negligence claims. The Court makes the following findings.

As to Plaintiff's federal claims against Wagoner Sheriff as an initial matter, the Supreme Court has long stated, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" such that "local government officials sued in their official capacities are 'persons' under § 1983 in those cases in which, as here, a local government would be suable in its own name." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n. 55 (1978). Furthermore, for purposes of § 1983 and under 19 Okla. Stat. § 4, "Suit may be brought against a county by naming a county officer identified in Section 161 of this title when it is alleged that such officer in his or her official capacity is directly or vicariously liable to plaintiff in an action not arising out of contract." *See also* 19 Okla. Stat. § 161 (defining "county officer" as "the county clerk, county commissioner, county assessor, district court clerk, county treasurer and county sheriff"). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

### I. Count 2, Final Policymaker Liability.

To establish municipal liability based on Elliott's conduct, Plaintiff must show Elliott had final policymaking authority and that Elliott's decisions (or ratification of a subordinate's decisions) were the moving force behind Watts's constitutional injury. *See Hinkle v. Beckham Cty. Bd. Of Cty. Comm'rs*, 962 F.3d 1204, 1239-1240 (10th Cir. 2020).

"The judge, not the jury, should determine who exercises final policymaking authority in a municipality." *Milligan-Hitt v. Bd. of Trs. of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1224 (10th Cir. 2008) (citing *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 736-738 (1989)). Importantly, the identity of those final policymakers whose conduct can create municipal liability is "'a question of *state law*,'" such that "the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury." *Jett*, 491 U.S. at 737; *see also Ware v. Unified Sch. Dist. No. 492, Butler Cty.*, *State of Kan.*, 902 F.2d 815, 819 (10th Cir. 1990) (using Kansas law to assess whether the school board delegated final policymaking authority to Ware, finding "the board has not conceded the delegation of its authority, no provision of law arguably vested Geil with final authority, and his decision was subject to review by the board."). "Under Oklahoma law, the sheriff is the final policymaker for a county jail." *Harden v. Hedgecock*, 181 F.4th 1094, 1101 (10th Cir. 2026) (citation omitted); *see also Whitson v. Bd. of Cnty. Commissioners of Cnty. of Sedgwick*, 106 F.4th 1063, 1071-1072 (10th Cir. 2024) ("In this circumstance, we see no escape from the conclusion that Sheriff Hanna possessed final authority to establish municipal policy *with respect to the action ordered*. Indeed, he had not only the authority, but the responsibility, to set policy with respect to the treatment of prisoners in his custody.") (internal quotation omitted). Nevertheless, the alleged "the conduct must be 'fairly attributable to the municipality.'" *Whitson*, 106 F.4th at 1072 ("In other words, when the policymaker is the alter ego of the municipality, liability is appropriate, regardless of the miscreant's motives or whether the conduct was within the scope of employment.

The Supreme Court has recognized this narrow basis of liability outside of respondeat superior.") (quoting *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1287 (10th Cir. 2007)).

The remaining issue, therefore, is whether Plaintiff sufficiently alleges that Elliott's decisions (or ratification of a subordinate's decisions) were the moving force behind Watts's constitutional injury. Defendant asserts that Plaintiff's claim for final policymaker liability is not supported by specific, nonconclusory allegations of fact and is devoid of any non-conclusory allegation that Wagoner Sheriff either had any personal involvement in any decisions regarding medical or mental healthcare for Watts or subjective awareness that the medical staff were not providing adequate care to Watts. Wagoner Sheriff also argues that Plaintiff only alleges Wagoner Sheriff knew of Watts's serious mental illness, but not that he knew Watts was unmedicated or untreated. This second argument is unavailing. Plaintiff alleges Watts "was left at the WCDC in an unmedicated state and without treatment for a serious mental illness that was known to Wagoner Sheriff and the medical staff at the WCDC," *id.*, p. 12, ¶ 93, *and* that Wagoner Sheriff had "actual knowledge [of], including, without limitation: incoherence, decubitus ulcers, and untreated schizophrenia." *Id.*, p. 19, ¶ 165.

Plaintiff alleges in the Second Amended Complaint that Wagoner Sheriff is a final policymaker over jail operations and solely responsible for the operation of the WCSO, including "promulgating, creating, implementing and possessing responsibility for all operations and the WCDC, supervision, policies, practices, staffing, and training." Docket No. 35, p. 2, ¶ 2. For a final policy maker claim, a single decision by a county's final

policymaker may subject the county to liability under 42 U.S.C. § 1983. *Bonner v. Lester*, 2011 WL 13078380, at *1 (W.D. Okla. Sept. 27, 2011) (citations omitted).

In Count 2, the Second Amended Complaint alleges Wagoner Sheriff "[1] knew of and disregarded [Watts's] objectively serious medical needs throughout [Watts's] detention at the WCDC, [2] he was personally aware that no staff were stationed at STFM, and [3] he knew his office could not rely on STFM to execute the order returning [Watts] to the custody of the WCSO, and despite that knowledge he evicted [Watts] from the WCDC with indifference to the consequences." *Id.*, p. 20, ¶ 168. Plaintiff points out that she additionally alleges that Watts's unmedicated state and lack of treatment "was known to Elliott and the medical staff at the WCDC." *Id.*, p. 12, ¶ 93. Furthermore, she alleges that, despite an awareness of Watts's conditions, Wagoner Sheriff failed or refused to provide "adequate staffing, facilities, equipment, or procedures to provide an adequate healthcare delivery system[.]" *Id.*, pp. 19-20, ¶ 165. She points out that final policymaker liability is not limited to direct personal medical decisions, and that she is alleging that Wagoner Sheriff's policies, including "worsen to release," patient dumping, and sending Watts to STFM without supervision, were Wagoner Sheriff's decisions.

"To state a claim against a municipal entity in this context, plaintiffs must allege facts showing: (1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1184 (10th Cir. 2020). *Accord Estate of Burgaz ex rel. Zommer v. Bd. of Cnty. Com'rs*, 30 F.4th 1181, 1189 (10th Cir. 2022); *Arnold v. City of Olathe, Kansas*, 35 F.4th 778, 795 (10th Cir. 2022) ("To prove municipal liability under § 1983, the plaintiff must show: (1) a municipality enacted or

maintained a policy, (2) the municipality was deliberately indifferent to the resulting constitutional violations, and (3) the policy caused the underlying constitutional violation.) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013)). In Count 2, Plaintiff alleges indifference to the consequences of disregarding Watts's objectively serious medical needs, failing to station a staff member at STFM, and improperly relying on STFM to execute the Court order that Watts not be released to the streets.

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotations omitted); *accord Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019).

A plaintiff may hold a municipality liable for actions by a person with "final policymaking authority[.]" *Whitson*, 106 F.4th at 1067 ("[W]hen an official takes action over which he or she has final policymaking authority, the policymaker *is* the municipality, so it is fair to impose liability on that entity for that action." (emphasis in original)). This can take two forms, (i) a challenge to a facially unlawful policy, or (ii) a challenge that a facially lawful policy led to a violation of constitutional rights. Though perhaps a close

call, the Court finds Plaintiff fails to state a claim under either application, although Plaintiff should take pains moving forward to make clear the basis for her arguments.

Where a plaintiff alleges that a policy is facially unconstitutional, "'issues of fault and causation'" are ordinarily "'straightforward.'" *Hinkle*, 962 F.3d at 1240 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)); *see also Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) ("[W]hen an official municipal policy itself violates federal law, issues of culpability and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question."). "A county's sanctioning of a facially unlawful policy establishes that it was the moving force behind the injury of which the plaintiff complains." *Hinkle*, 962 F.3d at 1240 (quotation omitted); *see also Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) ("Where an official policy or practice is unconstitutional on its face, it necessarily follows that a policymaker was not only aware of the specific policy, but was also aware that a constitutional violation will most likely occur."). Plaintiff does not allege facts to support a facial challenge to any specific Wagoner Sheriff policy at WCDC. The Court therefore turns to the alternative, whether Plaintiff sufficiently alleges that a facially lawful policy nevertheless led to a violation of Watts's rights.

"[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Hinkle*, 962 F.3d at 1241 (quoting *Brown*, 520 U.S. at 407, (quoting *Canton*, 489 U.S. at 388)). Causation is not clearly alleged in that Plaintiff alleges

three specific and separate problems with Wagoner Sheriff as a final policymaker, but conclusorily states that Wagoner sheriff was responsible and "the moving force behind the injuries and damages suffered." Docket No. 35, p. 20, ¶ 168.

The state of mind, or deliberate indifference, standard "'is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action[.]'" *Waller*, 932 F.3d at 1284 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney*, 143 F.3d at 1307. "While typically notice is established by proving the existence of a pattern of tortious conduct, it can also be established in a narrow range of circumstances where a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Hinkle*, 962 F.3d at 1241 (internal quotation marks omitted) (quoting *Waller*, 932 F.3d at 1284); *see also George, on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Commissioners*, 32 F.4th 1246, 1254 (10th Cir. 2022) ("deliberate indifference ordinarily requires showing a pattern of similar instances."); *Arnold v. City of Olathe, Kansas*, 35 F.4th 778, 795 (10th Cir. 2022 ("Notice can be established by proving the existence of a pattern of constitutional violations or, in a narrow range of circumstances, if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.") (quotation omitted).

Plaintiff provides no pattern of constitutional violations in her Second Amended Complaint, and therefore must rely on the "narrow range of circumstances" to assert that the disregard of Watts's serious medical needs, failure to station a staff member at STFM, and "eviction" from WCDC is a highly predictable and/or plainly obvious consequence of a policy or policies.[2] "A local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Burke v. Regalado*, 935 F.3d 960, 997-998 (10th Cir. 2019) (brackets and internal quotation marks omitted). Plaintiff's Second Amended Complaint does not meet this standard, instead generically referring to a vague responsibility for "policies and practices." Docket No. 35, p. 20, ¶ 168. Defendant's motion for dismissal is therefore granted as to Count 2.

## II. Counts 1, 3, & 4 – Systemic Liability, Direct and Indirect

Plaintiff alleges in her Second Amended Complaint that Wagoner Sheriff, as outlined in *Count 1*, had actual knowledge of Watts's objectively serious medical conditions while at WCDC, but that he failed to implement appropriate staffing, facilities, equipment, or procedures sufficient for an adequate healthcare delivery system and that he

---

[2] Deliberate indifference . . . is defined differently for Eighth Amendment and municipal liability purposes. . . . In the municipal liability context, deliberate indifference is an objective standard which is satisfied if the risk is so obvious that the official should have known of it." *Barney*, 143 F.3d at 1307 n.5; *Buchanan v. Turn Key Health Clinics, LLC*, 2023 WL 6997404, at *8 (10th Cir. Oct. 24, 2023) (same); *see also George , on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Commissioners*, 32 F.4th 1246, 1258 n.3 (10th Cir. 2022) (distinguishing municipal liability deliberate indifference from prison conditions context, stating, "We do not equate the two deliberate-indifference standards here.").

did so with deliberate indifference such that his actions and/or inactions were the moving force behind a systemic deficiency at the WCDC. The practices alleged include the adoption of affirmative practices as alleged in *Count 3* of (a) worsen until released, (b) financial avoidance, and (c) patient dumping, as well as the indirect policies as alleged in *Count 4* of (a) inadequate training, (b) inadequate staffing and (c) inadequate supervision. Docket No. 35, pp. 19-21, ¶¶ 164-166, 169-172. Both parties address these three claims without separating them, so the Court proceeds the same way.

Although a municipality or other local governmental body is a "person" for purposes of § 1983, it "may not be held liable under § 1983 solely because it employs a tortfeasor." *Brown*, 520 U.S. at 403. Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694; *see also Crowson*, 983 F.3d at 1191 ("A core principle of *Monell* liability is that municipal entities are liable for only their own actions and not vicariously liable for the actions of their employees.") (citing *Schneider*, 717 F.3d at 770).

<u>A. Constitutional Violation</u>. "The right to custodial medical care is well settled. 'The Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same standard of medical care that the Eighth Amendment requires for convicted inmates.'" *Estate of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1262 (10th Cir. 2022) (quoting *Lance v. Morris*, 985 F.3d 787, 793 (10th Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While municipal liability is generally dependent on "whether a specific

municipal officer violated an individual's constitutional rights[,]" *Crowson*, 983 F.3d at 1191, the Tenth Circuit has carved a "'limited exception' to the requirement of individual unconstitutional action '[w]here the sum of multiple officers' actions taken pursuant to municipal policy results in a constitutional violation, the municipality may be directly liable[; *i.e.*,] the municipality may not escape liability by acting through twenty hands rather than two.'" *Buchanan v. Turn Key Health Clinics, LLC*, 2023 WL 6997404, at *7 (10th Cir. Oct. 24, 2023) (quoting *Crowson*, 983 F.3d at 1191). Plaintiff alleges no specific individual officer violated Watts's constitutional rights and thus must rely on this limited exception to establish liability for "a claim of 'a *systemic [constitutional] violation* carried out by multiple actors' *pursuant to a defective municipal policy*." *Buchanan*, 2023 WL 6997404, at *7 (emphasis added) (quoting *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1144-1145 (10th Cir. 2023) and *Crowson*, 983 F.3d at 1191). Plaintiff meets this standard. The Court finds she sufficiently alleges a constitutional violation by the combined acts or omissions of employees acting under WCSO policies given Watts's course of treatment over the two years he was at WCDC and the events surrounding his release.

In addition to alleging a constitutional violation in making a claim against a municipal entity, "a plaintiff must allege facts showing (1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Lucas*, 58 F.4th at 1145 (citing *Crowson*, 983 F.3d at 1184). As noted above, a **municipal policy or custom** can be demonstrated in a number of ways:

(1) a formal regulation or policy statement; (2) an informal custom

> amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller*, 932 F.3d at 1283-1284 (quoting *Bryson*, 627 F.3d at 788 (internal quotation marks and brackets omitted)). Plaintiff's Counts 1, 3, and 4 reflect allegations pursuant to the first, second, and third ways, above.

> "For **causation** . . . the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1241 (10th Cir. 2020) (quotations omitted). The policy or custom must be "the moving force behind the injury alleged." *Schneider*, [717 F.3d at 770 (quotations omitted).] And "[a] local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm [that] will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Burke* [*v. Regalado*, 935 F.3d 960, 997-998 (10th Cir. 2019)] (quotations omitted). "In the municipal liability context," **deliberate indifference** "is an objective standard" that may be "satisfied if the risk is so obvious that the official should have known of it." *Barney*[, 143 F.3d at 1307 n.5].

*Buchanan*, 2023 WL 6997404, at *8 (10th Cir. Oct. 24, 2023); *see also Johnson v. Davis Cnty.*, 2022 WL 830202, at *5 (10th Cir. Mar. 21, 2022) ("'In the municipal[-]liability context,' by contrast, 'deliberate indifference is an objective standard.'") (quoting *Barney*, 143 F.3d at 1307 n.5). Wagoner Sheriff asserts Plaintiff's claims regarding the policies lack the requisite specificity and facts to support causation, but the Court disagrees.

<u>B. Policy or custom involving deficient training and Causation</u>. Plaintiff alleges both affirmative policies and indirect policies or practices caused Watts's injuries. These

include a practice of allowing detainees to worsen until they are released, releasing inmates when medical conditions would be costly to treat at the WCDC and dumping patients for the same reasons. Additionally, Plaintiff alleges the WCDC staff received inadequate training, supervision, and had inadequate staffing.

"In considering this theory, we are mindful of the Supreme Court's warning that '[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" *Waller*, 932 F.3d at 1285 (quoting *Connick*, 563 U.S. at 61). "When a *Monell* claim is based on an alleged failure to train, the plaintiff's allegations must 'reflect[] a 'deliberate' or 'conscious' choice by a [government entity].'" *Thomas v. El Paso Cnty., Colorado*, 2024 WL 4268478, at *15 (D. Colo. Sept. 3, 2024), *report and recommendation adopted sub nom. Thomas v. El Paso Cnty.*, 2024 WL 4267868 (D. Colo. Sept. 23, 2024) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

Contrary to Plaintiff's assertion, in the *Tenth Circuit*, "[t]o survive a motion to dismiss, [a municipal liability] claim must allege sufficient facts to show that a *specific* policy or custom was the moving force behind the alleged violation." *Dalcour v. City of Lakewood*, 492 Fed. Appx. 924, 930 (10th Cir. 2012) (emphasis added). Plaintiff's allegations meet these requirements for both the affirmative and indirect policies alleged, given the course of events as alleged in the Second Amended Complaint. This includes Plaintiff's allegation of inadequate staffing to the extent Plaintiff alleges Watts never saw a physician or mental health professional the entire time he was at WCDC except for when he was treated at the hospitals, given the inference is that one was not available at the WCDC. Plaintiff does not, however, plausibly allege inadequate staffing with regard to a

lack of nursing staff. While it is clear that the nursing staff went long stretches without treating Watts based on the allegations, the Second Amended Complaint allegations reflect that nursing staff was present at the WCDC and there is no allegation or even inference that the staffing levels were inadequate (only their treatment of Watts).

C. Deliberate Indifference. For Plaintiffs' claims here,

> "To demonstrate that a municipality acted with deliberate indifference, a plaintiff may show that the municipality had actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation and consciously or deliberately [chose] to disregard the risk of harm. Notice can be established through a pattern of tortious conduct or if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction."

*Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022) (internal quotations omitted). Again, Plaintiff does not allege a pattern but instead alleges that Wagoner Sheriff had notice because the alleged constitutional violations were a predictable and/or plainly obvious consequence of Wagoner Sheriff's actions and/or inactions.

Plaintiff's Second Amended Complaint broadly alleges that Watts was held at WCDC for nearly two years, receiving only sporadic treatment for objectively serious medical needs of not uncommon medical impairments when they became acute and/or life threatening, as well as the alleged policies of allowing an inmate to worsen before releasing to avoid financial responsibility and dump a patient on another, and alleged indirect policies of inadequate training, supervision, and staffing. If substantiated, the allegations are sufficient to show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."

*Schneider*, 717 F.3d at 773 (quoting *Canton*, 489 U.S. at 390). The Court therefore finds Plaintiff plausibly alleges claims for constitutional violations as to Counts 1, 3, and 4, at this stage of the case.

**III. Count 11 – (Alternative Pleading) State Law Negligence Violation.**

Finally, Plaintiff alleges an alternative state law claim as to Wagoner Sheriff, specifically Elliott in his official capacity, for negligent performance of a law enforcement function. Plaintiff asserts that Deputy Tellez, who transported Watts to STFM, breached the duty to communicate to STFM the parameters of the court's order released Watts. Alternatively, she pleads that the court order was sufficiently communicated to STFM but that WCSO failed to station a deputy or take reasonable measures to ensure Watts was not released to the streets.

The Court recognizes that Fed. R. of Civ. P. 8 permits a party to plead in the alternative and, further, to "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2), (3). Thus, "[f]ederal pleading rules recognize the possibility that the facts as eventually established could cut either way and therefore allow a plaintiff to plead that the contact was both intentional and accidental and later narrow the claim as the facts merit." *Ryland v. Blue Cross Blue Shield Healthcare Plan of Georgia*, 2019 WL 7195610, at *2 (W.D. Okla. Dec. 26, 2019). The initial problem with this claim, however, is that Plaintiff has named the wrong party. Suits under the OGTCA "shall name as defendant the state or the political subdivision against which liability is sought to be established." 51 Okla. Stat. § 163(C). "The state or political subdivision against which liability is sought to be established shall be named as defendant, and in no instance shall

an employee acting within the scope of employment be named as a defendant, with the exception of resident physicians." *Speight v. Presley*, 2008 OK 99, ¶ 20, 203 P.3d 173, 179 (citing 51 Okla. Stat. § 163(C)). "[O]fficial-capacity suits are improper because government officers are protected by the GTCA. Thus, [a] Sheriff []in his official capacity is not a proper defendant under state law, and an official-capacity suit may proceed only under § 1983." *Altstatt v. Bd. of Cnty. Commissioners for Oklahoma Cnty.*, 2023 WL 6130618, at *4 (W.D. Okla. Sept. 19, 2023). (citing *Speight*, 2008 OK 9, ¶ 20, 203 P.3d at 179; *Pellegrino v. State ex rel. Cameron Univ.*, 2003 OK 2, ¶ 6, 63 P.3d 535, 537 ("Of course, designating an employee in his or official capacity as a named defendant for this type of claim is improper"); *see also Harding v. Grisham*, 2022 WL 7570650, at *2 (E.D. Okla. Oct. 13, 2022), *affirmed*, 2023 WL 5286249 (10th Cir. Aug. 17, 2023) ("The OGTCA requires that a suit brought pursuant to its provisions 'name as defendant the state or political subdivision against which liability is sought to be established' and specifically prohibits naming as a defendant an employee acting within the scope of his or her employment.") (citing 51 O.S. § 163(C)).

But even if the Court were to grant leave to substitute the proper party for this alternative claim, the Court finds it would fail. Wagoner Sheriff contends that it is exempt by virtue of immunity for the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility, or injuries resulting from the parole or escape of a prisoner or injuries by a prisoner to any other prisoner[,]" 51 Okla. Stat. Ann. § 155(25), as well as "[e]xecution or enforcement of the lawful orders of any court," *id.*, § 155(3), "[p]erformance of or the failure to exercise or perform any act or service which is in the

discretion of the state or political subdivision or its employees[,]" and "[c]ivil disobedience, riot, insurrection or rebellion or the failure to provide, or the method of providing, police, law enforcement or fire protection[.] *Id.*, § 155(5) & (6). Furthermore, Wagoner Sheriff alleges Plaintiff fails to demonstrate that Deputy Tellez or the WCSO owed a duty to Watts, and that no special relationship existed requiring Deputy Tellez to prevent others from harming Watts. Wagoner Sheriff also alleges that Watts's injuries were not reasonably foreseeable and Deputy Tellez's actions were not the proximate cause of injuries to Watts by alleged excessive force of Muskogee police officers.

Plaintiff responds that a municipality is liable for the tortious acts of police officers committed within the scope of employment, and negligent performance of a law enforcement function is not shielded from immunity under the OGTCA. *See Smith v. City of Stillwater*, 2014 OK 42, ¶ 37, 328 P.3d 1192, 1204 ("[N]egligent performance of a law enforcement function is not shielded from immunity under the GTCA."). Furthermore, Plaintiff contends that § 155(25) does not apply because Watts was no longer a WCDC inmate when he was taken to STFM. Plaintiff asserts that Deputy Tellez breached the duty to prevent Watts's release to the streets. As further noted, Plaintiff asserts that "abandoning" Watts at the hospital was not in execution of the Court's order and was in violation of it. Plaintiff also argues nonsensically that the alleged negligence occurred in the execution of the Court order (§ 155(3)), not in compliance with it. She provides no support or clarification for this argument and the Court disregards it. Likewise, Plaintiff contends that the discretionary exception, § 155(5), does not apply because there was no room for discretion in the order, and § 155(6) does not apply because Deputy Tellez was

not providing police protection. Finally, Plaintiff contends that Wagoner Sheriff owed a duty to Plaintiff, and that causation is a jury question.

Ultimately, the Court finds this claim should be dismissed because it does not sufficiently overcome Defendant's argument regarding proximate cause and foreseeability. The injury upon which Plaintiff grounds this claim is the "the serious physical injuries, including a hip fracture, and other damages," Docket No. 35, pp. 26-27, ¶ 192, that occurred after Watts's encounter with Muskogee police officers. "Generally, the proximate cause of an injury in a negligence case is an issue of fact for the jury[, and i]t becomes a question of law for the court ***only when*** there is no evidence from which a jury could reasonably find a causal nexus between the act and the injury." *Iglehart v. Bd. of Cnty. Comm'rs of Rogers Cnty.*, 2002 OK 76, ¶ 15, 60 P.3d 497, 504. Under Oklahoma law, "proximate cause of an injury must be the efficient cause which sets in motion the chain of circumstances leading to the injury; if the negligence complained of merely furnishes a condition by which the injury was made possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury." *Thur v. Dunkley*, 1970 OK 157, ¶ 16, 474 P.2d 403, 405. "Foreseeability is an essential element of proximate cause in Oklahoma, and it is the standard by which proximate cause, as distinguished from the existence of a mere condition, is to be tested." *Dirickson v. Mings*, 1996 OK 2, ¶ 9, 910 P.2d 1015, 1019 (quotation omitted). "Generally, a defendant owes a duty of care to the plaintiff who is foreseeably endangered by defendant's conduct with respect to all risks that make the conduct unreasonably dangerous." *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 14, 160 P.3d 959, 964.

In sum, "liability in many types of negligence cases involves an adjudication of what the defendant should have known." *Moran v. City of Del City*, 2003 OK 57, ¶ 11, 77 P.3d 588, 592, *as corrected* (June 17, 2003). Plaintiff attempts to argue that Wagoner Sheriff and the City of Muskogee are concurrent tortfeasors, while Wagoner Sheriff asserts supervening causes cut the Wagoner County off from liability. Wagoner Sheriff is correct. "Tortfeasors are classified as concurrent tortfeasors when their independent acts concur to produce a single or indivisible injury. [Put another way,] concert is lacking, but a single or indivisible injury or harm is nonetheless produced." *Kirkpatrick v. Chrysler Corp.*, 1996 OK 136, ¶ 10, 920 P.2d 122, 126. This is distinguishable, however, from a supervening cause, which cuts off liability for any original negligence. Under Oklahoma law, a supervening cause "must (1) be independent of the primary negligence, (2) be adequate *of itself* to bring about the injury complained of and (3) not be a reasonably foreseeable event." *Lockhart v. Loosen*, 1997 OK 103, ¶ 10, 943 P.2d 1074, 1079, *as corrected* (Aug. 21, 1997). "When such an act qualifies as a *supervening cause,* the original negligence mutates into a mere *condition* and as a matter of law is no longer actionable." *Id.* "Independence does not necessarily imply absence of some linkage between the two acts; rather, it means that the intervening act is neither invited by nor an ordinary response to the original act." *Henry v. Merck & Co.*, 877 F.2d 1489, 1495 (10th Cir. 1989). Furthermore, "the fact that the original actor's conduct or product may have facilitated an intervening actor's actions does not prevent the intervening cause from meeting the requirement that it be adequate of itself to bring about the result." *Gaines-Tabb v. ICI Explosives USA, Inc.*, 995 F. Supp. 1304, 1313 (W.D. Okla. 1996), *affirmed*, 160 F.3d 613 (10th Cir. 1998). "[W]here there

are no material facts in dispute and the undisputed facts do not support conflicting inferences, proximate cause or the existence of a supervening cause which breaks the causal link may be decided as a matter of law." *Id.*

While Plaintiff sufficiently alleges a condition, it is clear from the Second Amended Complaint allegations that the intervening actions – Watts walking from Wagoner to Muskogee, his encounter with Muskogee police (an entirely different law enforcement agency), and any injuries resulting from that encounter – were neither invited by nor an ordinary response to a failure to inform STFM of a Court order or Watts being left at STFM without a deputy stationed at the hospital. The Cout therefore finds this claim should be dismissed.

**IV. Leave to Amend.**

Plaintiff cursorily requests in her Response that, in the event dismissal is granted, she be given leave to amend her Second Amended Complaint yet again. "[C]ursory requests for leave to amend [as in this case] are insufficient." *Bangerter v. Roach*, 467 Fed. Appx. 787, 789 (10th Cir. 2012) (citation omitted). On November 10, 2025, Plaintiff first amended the original Complaint before serving the original defendants. Following the filing of motions to dismiss by Defendants Wagoner Sheriff and STFM, the Court invited Plaintiff to amend her Complaint again. She did so on March 25, 2026, adding numerous claims and parties. The Court finds that futility of amendment, in addition to Plaintiff's repeated failure to cure deficiencies by amendments previously allowed with respect to this Defendant, adheres in favor of denying any additional opportunities to amend the claims against this Defendant. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend

may be denied for, *inter alia*, "repeated failure to cure deficiencies by amendments previously allowed[.]").

## V. CONCLUSION

Accordingly, Defendant Chris Elliott's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 37] is hereby GRANTED IN PART with respect to Plaintiff's Counts 2 and 11, but otherwise DENIED, as to Counts 1, 3, and 4.

**IT IS SO ORDERED** this 21st day of October, 2026.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**