**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TAMMY THOMAS, as Next Friend of Benny Watts,** | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. CIV-25-366-GLJ** |
| **CHRIS ELLIOTT, Official capacity as Sheriff of Wagoner County, Oklahoma; SAINT FRANCIS HOSPITAL MUSKOGEE, INC.; CITY OF MUSKOGEE; WAGONER HOSPITAL AUTHORITY; and ANDY SIMMONS,** | ) | |
| **Defendants.** | ) | |

## ORDER

This matter comes before the Court on motions for partial and/or total dismissal by all remaining Defendants in this case. Plaintiff Tammy Thomas, the daughter and court-appointed guardian of her father Benny Watts, sues, *inter alia*, Saint Francis Hospital Muskogee, Inc. ("STFM"), alleging a state law claim of negligence, arising out of Watts's release from STFM to the streets. STFM moves to dismiss the sole claim against it. For the reasons set forth below, Defendant Saint Francis Hospital Muskogee, Inc.'s Motion to Dismiss and Brief in Support [Docket No. 38] is GRANTED.

### I. Procedural History

Plaintiff first filed this action on October 15, 2025, against Christ Elliott in his official capacity as Sheriff of Wagoner County, Oklahoma ("Wagoner Sheriff"). Docket

No. 2. Prior to issuing service, Plaintiff filed an Amended Complaint, against the Wagoner Sheriff and Saint Francis Hospital, Muskogee, Inc., in Muskogee, Oklahoma ("STFM"). Docket No. 6. On March 17, 2026, the parties consented to Magistrate Judge jurisdiction in this case. Docket No. 31, 28 U.S.C. § 636(c)(1), & Fed. R. Civ. P. 73(a). Both Defendants moved to dismiss the claims against them. Docket Nos. 13, 22. On March 16, 2026, the Court invited Plaintiff to file a Second Amended Complaint, and she did so on March 25, 2026. Docket Nos. 34-35. Plaintiff's Second Amended Complaint named the Wagoner Sheriff and STFM, as well as The City of Muskogee ("Muskogee), the Oklahoma Department of Mental Health and Substance Abuse Services ("OKDMH") the Wagoner Hospital Authority d/b/a Wagoner Community Hospital ("WCH"), and Andy Simmons, in his official capacity as Sheriff of Muskogee County, Oklahoma ("Muskogee Sheriff"). All Defendants moved to dismiss. Docket Nos. 37, 38, 55, 58, 61, & 69. On June 18, 2026, Plaintiff dismissed OKDMH, and this Court denied OKDMH's motion to dismiss as moot. Docket Nos. 72-73. The motions by all remaining Defendants remain.

Plaintiff alleges eleven causes of action in her Second Amended Complaint, but only ten remain because Count 9 as to OKDMH was dismissed (Docket No. 72): (1) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to adequate medical care based on a systemic deficiency, as to Wagoner Sheriff; (2) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to adequate medical care based on final policymaker liability, as to Wagoner Sheriff; (3) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to adequate medical care based on direct liability, as to Wagoner Sheriff; (4) § 1983 claim for deliberate

indifference in violation of the Fourteenth Amendment to adequate medical care based on indirect liability, as to Wagoner Sheriff; (5) common law negligence claims based on respondeat superior as to **STFM**; (6) negligent performance of a police function/excessive force in violation of the Oklahoma Governmental Tort Claims Act ("OGTCA"), as to the City of Muskogee; (7) § 1983 violation of the Fourth and Fourteenth Amendments based municipal liability claim under *Monell*[1] as to the City of Muskogee for excessive force and failure to train; (8) negligent medical care and hospital discharge in violation of the OGTCA, as to WCH; (10) § 1983 claim for violation of the Fourteenth Amendment based on deliberate indifference to serious medical needs pursuant to final policymaker, systemic deficiency, and affirmative policy liability, as to the Muskogee Sheriff; and (11) (pleading in the alternative to Count 5) negligent performance of a law enforcement function in violation of the OGTCA, as to Wagoner Sheriff. All parties now move to dismiss some or all of the claims against them. In this Order, the Court addresses the claim against STFM.

## II. Complaint Allegations

Watts was in custody at the Wagoner County Detention Center ("WCDC") from December 30, 2023 through October 6, 2025. During that time, she alleges, *inter alia*, that his type 2 diabetes and mental health condition of schizophrenia largely went untreated except for when they became "life threatening." Toward the end of Watts's stay at the WCDC, he developed decubitus ulcers, and Wagoner County, through the Wagoner

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

County Sheriff's Office and management of the WCDC, allowed his condition to worsen to justify releasing him on his own recognizance. Docket No. 35, pp. 4-13, ¶¶ 12-102.

According to Plaintiff, this happened on October 6, 2025, at which time the County obtained an order releasing Watts on his own recognizance, which states, "released on OR for transport to [STFM] to medically treat and find long term housing – if [STFM] release [Watts] from care, [Watts] to be returned to WCJ – [Watts is not] to be released to street." *Id.*, p. 13, ¶¶ 103-104. Based on this, Watts was transported to STFM. This order was either not communicated to STFM or it was communicated but not documented by STFM. Upon Watts's admission to STFM, the officer who transported Watts returned to duty at the WCDC, although case workers from the Wagoner County Sheriff's Office ("WCSO") were in contact with hospital administrative staff. Accordingly, Plaintiff alleges STFM knew or should have known about the Order that prevented him from being released to the street. *Id.*, p. 15, ¶¶ 119-122.

Regardless of actual knowledge, Plaintiff alleges that on October 7, 2025, STFM did release Watts to the street and/or failed to take reasonable measures to coordinate his transfer back into WCSO custody, including failing to advise WCSO of his impending release. Plaintiff alleges he should not have been released to the streets in his condition. *Id.*, pp. 15-16, ¶¶ 123-127. Wagoner Sheriff did not station a deputy at STFM, and Watts was released on his own from STFM on October 7, 2025, at which point he began walking from Muskogee, Oklahoma, to Fort Gibson, Oklahoma.

The allegations reflect that, following his release, Watts stopped to sleep in a yard and was observed littering, so Muskogee police officers approached him while he was not

capable of understanding the officers or why they were following him. Plaintiff alleges Watts was frightened of the officers and they attempted to grab Watts, who pulled away and refused to comply. Accordingly, they took him to the ground, resulting in a hip fracture. *Id.*, p. 16-17, 19 ¶¶ 130-141, 159-162. These events form the general basis of Plaintiff's allegations against STFM in Count 5.

## III. Legal Standards

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557, 570 (2007)). Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555 (2007)); *see generally* Fed. R. Civ. P. 8(a)(2) (complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]").

"While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in h[is] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Thus, the appropriate inquiry is "'whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement

to relief under the legal theory proposed.'" *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement[.]" *Iqbal*, 556 U.S. at 678.

## IV. Analysis

In Count five, Plaintiff alleges that STFM owed Watts a duty of reasonable care in accepting him at the hospital under orders that he not be released to the street. Alternatively, Plaintiff alleges STFM assumed a duty by telling WCSO that Watts would not be discharged before STFM contacted WCSO. She further alleges that one or more STFM employees breached that duty by allowing Watts to be released, which serves as the direct and proximate cause of damages and injuries Watts suffered. Docket No. 35, pp. 21-22, ¶¶ 174-175.

STFM asserts that Plaintiff fails to state a claim for relief because WCSO bore a non-delegable duty to maintain custody or control of Watts, which cannot be transferred to a third party such as STFM. *See Hillcrest Med. Ctr. v. State ex rel. Dep't of Corr.*, 1983 OK 101, ¶¶ 17-19, 675 P.2d 432, 435-436 (finding County responsible for cost of medical care while prisoner is in custody). STFM alleges that, at most, any duty owed by STFM would apply to WCSO and not Watts. Additionally, STFM contend that STFM employees neither breached any standard of care nor that their actions were the proximate cause of Watts's injuries, and that a duty of care only arises when circumstances require a Defendant to foresee the particular harm suffered. Rather, STFM asserts that STFM could not predict

that Watts "would sleep outside, commit a crime, refuse police commands, or suffer serious injuries as a result." Docket No. 38, p. 10. Finally, Plaintiff argues that Watts's own criminal conduct bars recovery.

In response, Plaintiff argues that Watts was not an inmate when he was taken to STFM, and that there is no Oklahoma case holding that a hospital owes no duty to a patient because the patient was delivered by a Sheriff's deputy. In support, she notes that, because Watts was not an inmate in custody when he was taken to STFM, Defendant's argument under *Hillcrest* is unavailing given that *Hillcrest* is a case about a billing dispute regarding who bore the financial burden of paying the hospital, and says nothing that distinguishes the duty of care STFM itself owed to Watts.

Furthermore, Plaintiff contends hospitals owe a duty of care in the discharge of psychiatric patients based on a special relationship as well as a general duty of care, including the additional conditions imposed by the Court. Plaintiff also argues that STFM assumed a duty of care by telling WCSO that Watts would not be discharged without STFM contacting WCSO first. Plaintiff challenges STFM's argument regarding a nondelegable duty. Plaintiff argues that STFM's duty to Watts as a patient remained regardless of the court order or any relationship with WCSO. Finally, Plaintiff contends that any arguments related to intervening causes are questions of fact inappropriate to this stage of the case. Further, Plaintiff argues it was "entirely foreseeable that a disoriented, psychiatrically impaired patient released to the street would be in danger from the environment, from traffic, from weather, and from encounters with law enforcement or third parties." Docket No. 46, p. 9. In addition, Plaintiff asserts that Watts could not have knowingly and

intentionally participated in a crime, here municipality ordinance violations, because he is legally incompetent and lacked the ability to understand the nature of any charges or proceedings brought against him as well as to assist in any defense.

In reply, STFM asserts that Plaintiff only alleges Watts was treated for decubitus ulcers before being released, not that STFM treated him in relation to his mental health, and therefore there was no special relationship or special duty owed arising from a psychiatrist-patient relationship simply because he had a mental illness. Finally, STFM asserts that Plaintiff fails to allege that the specific events leading to Watts's injuries were foreseeable, and therefore proximate cause is lacking.

"The elements of the tort of negligence are 1) a duty of care owed by defendant to plaintiff, 2) defendant's breach of that duty, and 3) injury to plaintiff caused by defendant's breach of that duty." *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 12, 160 P.3d 959, 964. STFM contests duty and causation.

<u>Duty</u>. In general, "a person owes a duty of care to another person whenever the circumstances place the one person in a position towards the other person such that an ordinary prudent person would recognize that if he or she did not act with ordinary care and skill in regard to the circumstances, he or she may cause danger of injury to the other person." *Id.*, 2007 OK 38, ¶ 13, 160 P.3d 959, 964 (citation omitted). Thus, "a duty of care may arise from a set of circumstances which would require the defendant to foresee the particular harm to the plaintiff." *Id.* (citation omitted). Under this rubric generally, a person or entity had no duty to prevent a third person from causing injury to another, with two exceptions: "a duty arises if (1) a special relationship exists between the actor and the

third person which imposes a duty upon the actor to control the third person's conduct, or (2) a special relationship exists between the actor and the other which gives to the other a right to protection." *Wofford v. E. State Hosp.*, 1990 OK 77, ¶ 9, 795 P.2d 516, 518. Plaintiff alleges STFM had actual knowledge of the Court order, that Watts's mental illness was obvious to anyone who encountered him, and that STFM case workers had communicated with WCDC staff about Watts. She contends this is sufficient to establish the hospital's duty to Watts.

"[T]here can be no actionable negligence where the defendant has breached no duty owed to the plaintiff." *Nicholson v. Tacker*, 1973 OK 75, ¶ 11, 512 P.2d 156, 158. "Whether a duty exists is a question of law; whether it has been breached is a question of fact." *Wofford*, 1990 OK 77, ¶ 22, 795 P.2d 516, 521 (citations omitted); *see also Gaines-Tabb v. ICI Explosives USA, Inc.*, 995 F. Supp. 1304, 1316 (W.D. Okla. 1996) ("Whether a duty exists—that is, whether the defendant stands in such a relationship to a plaintiff that the law will impose upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff—is a question of law for the Court. . . . [T]he defendant must have owed a duty to the plaintiff for liability to attach."), *affirmed*, 160 F.3d 613 (10th Cir. 1998).

Plaintiff correctly points out that Oklahoma law imposes a duty of reasonable care on hospitals treating psychiatric patients. *See Wofford*, 1990 OK 77, ¶ 17, 795 P.2d 516, 520 ("[A] psychiatrist has a duty to exercise reasonable professional care in the discharge of a mental patient. . . . The duty extends to such persons as are foreseeably endangered by the patient's release."). *Wofford* "squarely recognizes the liability of a state hospital for negligent release of a patient," *Shepard v. State ex rel. Dep't of Mental Health*, 1998 OK

CIV APP 23, ¶ 3, 957 P.2d 553, 555, and a suit so "predicated upon negligent release of a patient from a mental institution is a medical malpractice action." *Wofford*, 1990 OK 77, ¶ 16, 795 P.2d at 520. Generally, in the context of negligent release of a psychiatric patient, this type of duty "arises only when in accordance with the standards of his profession the therapist knows or should know that his patient's dangerous propensities present an unreasonable risk of harm to others." *Wofford*, 1990 OK 77, ¶ 17, 795 P.2d at 520. This duty thus does not apply in this circumstance, where Plaintiff alleges that Watts, the psychiatric patient,[2] was the *victim* of a third-party injury rather than the perpetrator.

Nevertheless, "hospitals must take into account the physical and mental condition of patients on an individual basis." *Rogers v. Baptist Gen. Convention of State of Okl.*, 1982 OK 69, ¶ 18, 651 P.2d 672, 676. Hospitals thus owe a duty of care in the discharge and release of patients. This duty remains whether the hospital had a duty not to release Watts or to, at a minimum, contact WCSO before releasing him. The parameters of this duty have been outlined by the Oklahoma Supreme Court:

> The most important consideration in determining the existence of a duty of care is foreseeability of harm to the plaintiff. Generally, a defendant owes a duty of care to the plaintiff who is foreseeably endangered by defendant's conduct with respect to all risks that make the conduct unreasonably dangerous. Foreseeable risk of harm establishes the zone of risk to assess whether defendant's conduct created a generalized and foreseeable risk of harm to plaintiff, by a reasonable prudent person standard. Foreseeable risk of harm that will lead the law to say a particular plaintiff is entitled to protection *will not generally be extended beyond reason and good sense*.

---

[2] This is not to mention the fact that Plaintiff alleges Watts was taken to STFM, a general hospital rather than psychiatric hospital, for treatment of decubitus ulcers as opposed to an exacerbation of his diagnosed mental illness.

*Lowery*, 2007 OK 38, ¶ 14, 160 P.3d at 964 (emphasis added).

Causation. As with the element of duty, "Foreseeability is an essential element of proximate cause in Oklahoma, and it is the standard by which proximate cause, as distinguished from the existence of a mere condition, is to be tested." *Dirickson v. Mings*, 1996 OK 2, ¶ 9, 910 P.2d 1015, 1019 (quotation omitted). "[L]iability in many types of negligence cases involves an adjudication of what the defendant should have known." *Moran v. City of Del City*, 2003 OK 57, ¶ 11, 77 P.3d 588, 592, *as corrected* (June 17, 2003). Given the allegations of Plaintiff's Second Amended Complaint, the court finds it plausible that STFM would have known that Watts, having been a pretrial detainee for twenty-two months released without warning or resources, would foreseeably end up walking a potentially great distance. It is also plausible given his mental illness, though perhaps a stretch, that that STFM would have known that Watts would foreseeably encounter law enforcement. What is not foreseeable, however, is that Watts would be *injured* in even a foreseeable encounter with law enforcement.

Under Oklahoma law, a supervening cause "must (1) be independent of the primary negligence, (2) be adequate *of itself* to bring about the injury complained of and (3) not be a reasonably foreseeable event." *Lockhart v. Loosen*, 1997 OK 103, ¶ 10, 943 P.2d 1074, 1079, *as corrected* (Aug. 21, 1997). "When such an act qualifies as a *supervening cause,* the original negligence mutates into a mere *condition* and as a matter of law is no longer actionable." *Id.* "Independence does not necessarily imply absence of some linkage between the two acts; rather, it means that the intervening act is neither invited by nor an ordinary response to the original act." *Henry v. Merck & Co.*, 877 F.2d 1489, 1495 (10th

Cir. 1989). Furthermore, "the fact that the original actor's conduct or product may have facilitated an intervening actor's actions does not prevent the intervening cause from meeting the requirement that it be adequate of itself to bring about the result." *Gaines-Tabb*, 995 F. Supp. at 1313, *affirmed*, 160 F.3d 613 (10th Cir. 1998). "[W]here there are no material facts in dispute and the undisputed facts do not support conflicting inferences, proximate cause or the existence of a supervening cause which breaks the causal link may be decided as a matter of law." *Id.*

STFM spends much time arguing about Watts's own allegedly criminal actions. This argument is uniquely unpersuasive given the plausible allegations of Watts's incompetence[3] at the time of his release from STFM. Nonetheless, under the facts as alleged in Plaintiff's Second Amended Complaint, the Court finds no plausible allegation of foreseeability and causation with respect to STFM. While STFM's actions in releasing Watts may have facilitated what ultimately happened, Plaintiff does not plausibly allege that STFM's actions either invited the City of Muskogee's response to Watts nor that Watts being "taken to the ground" was an ordinary response to his release. Accordingly, STFM's release of Watts was inadequate to bring the resulting injuries to Watts.

## V. Leave to Amend.

Plaintiff cursorily requests in her Response that, in the event dismissal is granted,

[3] Watts was deemed incompetent prior to his delivery to STFM. *See* Wagoner County District Court, Case No. CF-2023-218 (Order, Sept. 23, 2025); *see also United States v. Ahidley*, 486 F.3d 1184,1192, n. 5 (10th Cir. 2007) ("We may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.").

she be given leave to amend her Second Amended Complaint yet again. "[C]ursory requests for leave to amend [as in this case] are insufficient." *Bangerter v. Roach*, 467 Fed. Appx. 787, 789 (10th Cir. 2012) (citation omitted). On November 10, 2025, Plaintiff first amended the original Complaint before serving the original defendants. Following the filing of motions to dismiss by Defendants Wagoner Sheriff and STFM, the Court invited Plaintiff to amend her Complaint again. She did so on March 25, 2026, adding numerous claims and parties. The Court finds that futility of amendment, in addition to Plaintiff's repeated failure to cure deficiencies by amendments previously allowed, adheres in favor of denying any additional opportunities to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend may be denied for, *inter alia*, "repeated failure to cure deficiencies by amendments previously allowed[.]"). Futility is particularly applicable here given the allegations of supervening actions by the City of Muskogee law enforcement officers.

## VI. CONCLUSION

Accordingly, Defendant Saint Francis Hospital Muskogee, Inc.'s Motion to Dismiss and Brief in Support [Docket No. 38] is hereby GRANTED.

**IT IS SO ORDERED** this 21st day of October, 2026.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**