**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

**TAMMY THOMAS, as Next Friend of Benny Watts,**

**Plaintiff,**

v.

**CHRIS ELLIOTT, Official capacity as Sheriff of Wagoner County, Oklahoma; SAINT FRANCIS HOSPITAL MUSKOGEE, INC.; CITY OF MUSKOGEE; WAGONER HOSPITAL AUTHORITY; and ANDY SIMMONS,**

**Defendants.**

**Case No. CIV-25-366-GLJ**

# ORDER

This matter comes before the Court on motions for partial and/or total dismissal by all remaining Defendants in this case. Plaintiff Tammy Thomas, the daughter and court-appointed guardian of her father Benny Watts, sues, *inter alia*, the City of Muskogee, Oklahoma ("Muskogee"), alleging Fourth and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983 as well as a violation of the Oklahoma Governmental Tort Claims Act, arising out of an encounter between Watts and Muskogee law enforcement officers. Muskogee filed a motion to dismiss all of Plaintiff's claims against it. For the reasons set forth below, the finds that Defendant City of Muskogee's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 55] is GRANTED, except that Plaintiff shall be permitted to file a Motion for Leave to File a Third Amended

Complaint within fourteen days.

## I. Procedural History

Plaintiff originally filed this action on October 15, 2025, against Chris Elliott, in his official capacity as Sheriff of Wagoner County, Oklahoma ("Wagoner Sheriff"). Docket No. 2. Prior to issuing service, Plaintiff filed an Amended Complaint, against Wagoner Sheriff and Saint Francis Hospital, Muskogee, Inc., in Muskogee, Oklahoma ("STFM"). Docket No. 6. On March 17, 2026, the parties consented to Magistrate Judge jurisdiction in this case. Docket No. 31, 28 U.S.C. § 636(c)(1), & Fed. R. Civ. P. 73(a). Both Defendants moved to dismiss the claims against them. Docket Nos. 13, 22. On March 16, 2026, the Court invited Plaintiff to file a Second Amended Complaint, and she did so on March 25, 2026. Docket Nos. 34-35. Plaintiff's Second Amended Complaint named Wagoner Sheriff and STFM, as well as Muskogee, the Oklahoma Department of Mental Health and Substance Abuse Services ("OKDMH"), the Wagoner Hospital Authority d/b/a Wagoner Community Hospital ("WCH"), and Andy Simmons, in his official capacity as Sheriff of Muskogee County, Oklahoma ("Muskogee Sheriff"). All Defendants consented, *see* Docket No. 83, and moved to dismiss. Docket Nos. 37, 38, 55, 58, 61, & 69. On June 18, 2026, Plaintiff voluntarily dismissed OKDMH, and this Court denied OKDMH's motion to dismiss as moot. Docket Nos. 72-73. The motions by all remaining Defendants remain.

Plaintiff alleges eleven causes of action in her Second Amended Complaint, but only ten remain because Count 9 as to OKDMH was dismissed (Docket No. 72): (1) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to

adequate medical care based on a systemic deficiency, as to Wagoner Sheriff; (2) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to adequate medical care based on final policymaker liability, as to Wagoner Sheriff; (3) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to adequate medical care based on direct liabilty, as to Wagoner Sheriff; (4) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to adequate medical care based on indirect liability, as to Wagoner Sheriff; (5) common law negligence claims based on respondeat superior as to STFM; (6) negligent performance of a police function/excessive force in violation of the Oklahoma Governmental Tort Claims Act ("OGTCA"), as to **Muskogee**; (7) § 1983 violation of the Fourth and Fourteenth Amendments based municipal liability claim under *Monell*[1] as to **Muskogee** for excessive force and failure to train; (8) negligent medical care and hospital discharge in violation of the OGTCA, as to WCH; (10) § 1983 claim for violation of the Fourteenth Amendment based on deliberate indifference to serious medical needs pursuant to final policymaker, systemic deficiency, and affirmative policy liability, as to the Muskogee Sheriff; and (11) (pleading in the alternative to Count 5) negligent performance of a law enforcement function in violation of the OGTCA, as to Wagoner Sheriff. All parties now move to dismiss some or all of the claims against them. In this Order, the Court addresses the claims as to Muskogee.

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

## II. Complaint Allegations

Plaintiff asserts the following allegations on behalf of her father, Mr. Watts, an incapacitated person with a diagnosis of schizophrenia. Docket No. 35, p. 1, ¶ 1. Watts was in custody at the Wagoner County Detention Center ("WCDC") from December 30, 2023, through October 6, 2025. During that time, she alleges, *inter alia*, that Watts's type 2 diabetes and mental health condition of schizophrenia largely went untreated except for when they became "life threatening." Toward the end of Watts's stay at the WCDC, he developed decubitus ulcers. Plaintiff alleges that Wagoner Sheriff, by his management of the WCDC, allowed Watts's condition to worsen in order to justify releasing him on his own recognizance. Docket No. 35, pp. 4-13, ¶¶ 12-102.

According to Plaintiff, Wagoner Sheriff obtained an order releasing Watts on his own recognizance on October 6, 2025. The Order states, "released on OR for transport to [STFM] to medically treat and find long term housing – if [STFM] release [Watts] from care, [Watts] to be returned to WCJ – [Watts is not] to be released to street." *Id.*, p. 13, ¶¶ 103-104. Based on this, Watts was transported to STFM. Plaintiff alleges that on October 7, 2025, STFM did release Watts to the street and/or failed to take reasonable measures to coordinate his transfer back into WCSO custody.

Records reflect that following his release from STFM on October 7, 2025, Watts stopped to sleep in a yard and was observed littering, and Muskogee police officers approached him while he was not capable of understanding the officers or why they were following him. The officers observed Watts ignoring multiple commands to stop and that he continued to walk away. Plaintiff alleges Watts was frightened of the officers and that

they attempted to grab Watts, who pulled away and refused to comply. Accordingly, they took him to the ground. Plaintiff alleges that the description of taking Watts to the ground was "to mask tactics that are excessive, unnecessary, and used for the purpose of causing the person to suffer pain or injury beyond what is necessary under the circumstances." After being held at Muskogee County Detention Center for an indeterminate amount of time, Watts was transported back to STFM where he was diagnosed with a hip fracture and transferred to Saint Francis Tulsa for a higher level of care. *Id.*, p. 16-17, 19 ¶¶ 130-141, 159-162.

## III. Legal Standards

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557, 570 (2007)). Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555 (2007)); *see generally* Fed. R. Civ. P. 8(a)(2) (complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]").

"While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in h[is] complaint, the elements of each alleged cause of action help to determine

whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Thus, the appropriate inquiry is "'whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.'" *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement[.]" *Iqbal*, 556 U.S. at 678.

## IV. Analysis

Muskogee asserts Plaintiff fails to state a plausible claim for relief as to his § 1983 and state law negligence claims. The Court makes the following findings.

### I. Count 7, Failure to Train in relation to Excessive Force.

Although a municipality or other local governmental body is a "person" for purposes of § 1983, it "may not be held liable under § 1983 solely because it employs a tortfeasor." *Board of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694; *see also Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1191 (10th Cir. 2020) ("A core principle of *Monell* liability is that municipal entities are liable for only their own actions and not vicariously liable for the actions of their employees.") (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir.

2013)).

"In order to prevail on a claim against a municipality for failure to train its police officers in the use of force, a Plaintiff must first prove the training was in fact inadequate, and then satisfy the following requirements: (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city towards persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training." *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Generally, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). However, it is possible that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Canton*, 489 U.S. at 390. Importantly, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61.

A. Constitutional Violation. For excessive force claims brought pursuant to the Fourteenth Amendment, the Supreme Court instructs that this is a purely objective standard

such that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-397 (2015) ("[T]he appropriate standard for a pretrial detainee's excessive force claim is solely an objective one."). Of course, this "turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)). "These considerations include '[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting.'" *Wise v. Caffey*, 72 F.4th 1199, 1206 (10th Cir. 2023) (quoting *Kingsley*, 576 U.S. at 397 (2015)). This is not an exclusive list but is illustrative of "the types of objective circumstances potentially relevant to a determination of excessive force." *Kingsley*, 576 U.S. at 397. Moreover, in "an excessive force inquiry, we ask whether the force used 'would have been reasonably necessary *if the arrest or the detention were warranted.*'" *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012) (emphasis in original) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007)).

Because it is based on the totality of circumstances of each case, "[r]easonableness" does not have a precise test but rather "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. The Supreme Court

outlined three factors that courts are to consider: (1) the severity of the crime for which the suspect was seized, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing. *Id.* As noted above, whether a particular use of force was reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Application of the *Graham* factors generally favors Plaintiff here. Officers were investigating reports of Watts sleeping in a yard and littering. These are largely minor infractions. *See Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016) ("Although the officers are correct that an officer can effect an arrest for even a minor infraction, Perea's minor offense—at most—supported the use of minimal force. Instead, the officers used a taser against Perea ten times in two minutes. Repeated use of the taser exceeded the minimal force that would be proportional to Perea's crime.") (citing *Fogarty v. Gallegos*, 523 F.3d 1147, 1160 (10th Cir. 2008) (because detainee had committed only a petty misdemeanor, "the amount of force used should have been reduced accordingly")); *see also Est. of Booker v. Gomez*, 745 F.3d 405, 424 (10th Cir. 2014) ("Under prevailing Tenth Circuit authority, 'it is excessive to use a Taser to control a target without having any reason to believe that a lesser amount of force—or a verbal command—could not exact compliance.'") (quoting *Casey v. City of Federal Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007)). The second factor, whether the suspect posed an immediate threat to the safety of officers, likewise favors Plaintiff as the Second Amended Complaint alleges no facts establishing such circumstances.

The third factor – whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing – weighs slightly in favor of Muskogee. *Sholes v. City of Craig Colorado*, 2025 WL 1029507, at *6 (D. Colo. Apr. 7, 2025), *appeal dismissed sub nom. Sholes v. Caudell*, 2025 WL 3082264 (10th Cir. Oct. 10, 2025), and *appeal dismissed as moot sub nom. Sholes v. Mcintyre*, 2026 WL 1834397 (10th Cir. June 25, 2026) ("[H]e continued to walk away from officers in violation of their commands. Though a close call, the Court finds that this third *Graham* factor weighs slightly in favor of Defendants."); *cf. Estate of Taylor v. Salt Lake City*, 16 F.4th 744, 766 (10th Cir. 2021) (finding a suspect's "180-degree turn and walk[ing] away from the officers" sufficient for "a reasonable officer [to] conclude that, for some reason—including possibly a nefarious one—[the suspect] was seeking to evade law enforcement."). Plaintiff alleges Watts ignored multiple commands to stop and continued walking away, although Plaintiff also alleges he was not capable of understanding the officers due to his incompetence. Plaintiff was ultimately charged with littering, resisting arrest, and disorderly conduct. However, given the allegations of the encounter, the infraction alleged here supports only minimal use of force at most rather than force sufficient to fracture a hip. *Cf. Perea*, 817 F.3d at 1204 ("Even if Perea initially posed a threat to the officers that justified tasering him, the justification disappeared when Perea was under the officers' control. It is not reasonable for an officer to repeatedly use a taser against a subdued arrestee they know to be mentally ill, whose crime is minor, and who poses no threat to the officers or others. Because the officers repeated use of the taser cannot be described as reasonable, at least after the point Perea was subdued, the third *Graham* factor weighs against the officers."). Additionally, the Court notes that Watts's

mental status is relevant in assessing the officers' reasonableness in how they responded to the situation. *Est. of Ceballos v. Husk*, 919 F.3d 1204, 1214 (10th Cir. 2019) (The lower court was correct in recognizing that "[t]he mentally ill or disturbed condition of the suspect is a relevant factor in determining reasonableness of an officer's responses to a situation.").

The Court thus finds that, upon application of the *Graham* factors and additional relevant considerations including Watts's mental condition, the totality of the circumstances alleged and the stage of the case support a finding that Plaintiff sufficiently alleges a constitutional violation by Muskogee law enforcement officers in his Amended Complaint. *See Barnes v. Felix*, 605 U.S. 73, 76 (2025) ("To assess whether an officer acted reasonably in using force, a court must consider all the relevant circumstances, including facts and events leading up to the climactic moment."); *see also Cook v. City of Arvada, Colorado*, 2021 WL 243451, at *5 (D. Colo. Jan. 25, 2021) ("The *Graham* factors and the stage of litigation lean towards a . . . find[ing] that plaintiff has sufficiently alleged a constitutional violation[.]").

<u>B. Policy or custom involving deficient training and Causation</u>. In addition to alleging a constitutional violation in making a claim against a municipal entity, "a plaintiff must allege facts showing (1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023) (citing *Crowson*, 983 F.3d at 1184). A municipal policy or custom can be demonstrated in a number of ways:

> (1) a formal regulation or policy statement; (2) an informal custom

> amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283-1284 (10th Cir. 2019) (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks and brackets omitted)). Plaintiff's Count 7 alleges the fifth type of custom/policy, a failure to train officers "on encounters with mentally ill or disturbed persons who pose no criminal threat," Docket No. 35, p. 23, ¶ 180, and that Muskogee was deliberately indifferent to this need.

> "For **causation** . . . the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1241 (10th Cir. 2020) (quotations omitted). The policy or custom must be "the moving force behind the injury alleged." *Schneider*, [717 F.3d at 770 (quotations omitted).] And "[a] local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm [that] will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Burke* [*v. Regalado*, 935 F.3d 960, 997-998 (10th Cir. 2019)] (quotations omitted). "In the municipal liability context," **deliberate indifference** "is an objective standard" that may be "satisfied if the risk is so obvious that the official should have known of it." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 n.5 (10th Cir. 1998).

*Buchanan v. Turn Key Health Clinics, LLC*, 2023 WL 6997404, at *8 (10th Cir. Oct. 24, 2023); *see also Johnson v. Davis Cnty.*, 2022 WL 830202, at *5 (10th Cir. Mar. 21, 2022) ("'In the municipal[-]liability context,' by contrast, 'deliberate indifference is an objective

standard.'") (quoting *Barney*, 143 F.3d at 1307 n.5). "In considering this theory, we are mindful of the Supreme Court's warning that '[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" *Waller*, 932 F.3d at 1285 (quoting *Connick*, 563 U.S. at 61). "When a *Monell* claim is based on an alleged failure to train, the plaintiff's allegations must 'reflect[] a 'deliberate' or 'conscious' choice by a [government entity].'" *Thomas v. El Paso Cnty., Colorado*, 2024 WL 4268478, at *15 (D. Colo. Sept. 3, 2024), *report and recommendation adopted sub nom. Thomas v. El Paso Cnty.*, 2024 WL 4267868 (D. Colo. Sept. 23, 2024) (quoting *Canton*, 489 U.S. at 389).

In the Tenth Circuit, "[t]o survive a motion to dismiss, [a municipal liability] claim must allege sufficient facts to show that a *specific* policy or custom was the moving force behind the alleged violation." *Dalcour v. City of Lakewood*, 492 Fed. Appx. 924, 930 (10th Cir. 2012) (emphasis added). Muskogee asserts Plaintiff's claim regarding failure to train is conclusory and lacks the requisite specificity and facts to support causation. The Court disagrees. Under the facts alleged, one officer attempted to grab Watts, who pulled away and refused to comply, and one or more officers then took Watts to the ground, causing a leg injury that was ultimately diagnosed as a hip fracture. While all that was happening, Plaintiff also alleges that Watts was not capable of understanding the officers and was both legally incompetent and scared of the officers. The challenged policy is therefore closely related to the alleged violation of Watts's constitutional rights.

C. Deliberate Indifference. Finally,

> [t]o demonstrate that a municipality acted with deliberate indifference, a

> plaintiff may show that the municipality had actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation and consciously or deliberately [chose] to disregard the risk of harm. Notice can be established through a pattern of tortious conduct or if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.

*Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022) (internal quotations omitted). Here, Plaintiff asserts she is alleging that the absence of training in handling mental health crises foreseeably produces needless force in precisely the type of encounter officers had with Watts.

Given the allegations of the officers' interactions with and actions toward Watts, Plaintiff argues that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Schneider*, 717 F.3d at 773 (quoting *Canton*, 489 U.S. at 390). She contends this is not based on a single incident, but an absence of training demonstrated by Muskogee's own litigation history. Plaintiff asserts that Muskogee was on notice based on two previous cases, *Lance v. Morris*, 985 F.3d 787 (10th Cir. 2021) and *Allen v. Muskogee*, 119 F.3d 837, 842-845 (10th Cir. 1997), both of which are cited as part of Count 7. In *Allen*, which had Muskogee as a Municipal Corporation as a Defendant (unlike *Lance*), the Tenth Circuit recognized evidence in that case demonstrated that "it was common for officers to have to deal with mentally ill or emotionally disturbed people and people under the influence of drugs or alcohol," and that the use of force in that case "arose under circumstances that constituted a usual and recurring situation with which police officers must deal." 119 F.3d

at 842. Muskogee argues that Plaintiff fails to plead a pattern of similar violations, and that *Allen* is insufficient to have placed Muskogee on notice given the several-decades' gap between *Allen* and the allegations in this case. The Court agrees. On its own, *Allen* does not establish a pattern of tortious conduct, given it addresses events roughly twenty-eight years ago with no additional cases cited.[2]

However, "in a narrow range of circumstances, constructive notice can be found without a pattern if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Manning v. City of Tulsa*, 170 F.4th 1287, 1301 (10th Cir. 2026) (quotations omitted). Plaintiff alleges that Muskogee "knew to a moral certainty" that "the absence of adequate training in crisis intervention and de-escalation would plainly result in constitutional violations." Docket No. 35, p. 23, ¶ 180. However, a claim "that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" "could be made about almost any encounter resulting in injury." *Canton*, 489 U.S. at 391. "[F]or liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* Thus, liability is imposed "only where the municipality *itself* causes the constitutional violation at issue." *Dodds v. Richardson*, 614 F.3d 1185, 1209 (10th Cir. 2010) (Tymkovich, J., concurring) (quotation omitted) ("failure to adequately train employees" is "rightfully regarded" as a theory of causation rather than liability). Importantly, however, and fatal to Plaintiff's

[2] *Lance v. Morris*, 985 F.3d 787 (10th Cir. 2021), did not involve this Defendant as a party.

claim here, is that the "allegation that the City failed to train officers on deescalation and related matters does not fall within the narrow range of *Canton*'s hypothesized single-incident liability,'" *Manning*, 170 F.4th at 1301 (quoting *Connick*, 563 U.S. at 64), because this goes to the type of training rather than an alleged total absence of training. Muskogee is therefore entitled to dismissal of this claim.

**II. Count 6 – Negligent Performance of a Police Function/Excessive Force.**

Plaintiff next alleges an OGTCA negligence claim against Muskogee for negligent performance of a police function/excessive force. Docket No. 35, p. 22, ¶¶ 176-177. "Negligent performance of a law enforcement function is not shielded from immunity under the GTCA." *Smith v. City of Stillwater*, 2014 OK 42, ¶ 16, 328 P.3d 1192, 1198 (quoting *State ex rel. Okla. Dept. of Publ. Safety v. Gurich,* 2010 OK 56, ¶ 10, 238 P.3d 1) (citing *Salazar v. City of Oklahoma City,* 1999 OK 20, ¶ 27, 976 P.2d 1056)). "There are three elements to a claim for negligence: 1) a duty owed by the defendant to protect the plaintiff from injury; 2) a failure to perform that duty; and 3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care." *Smith*, 2014 OK 42, ¶ 22, 328 P.3d at 1200.

Plaintiff alleges Muskogee is liable under the OGTCA for the negligent performance of a police function by the officers, who used objectively unreasonable force against Watts, which caused him serious physical injury including a hip fracture. Docket No. 35, p. 22, ¶ 177. Muskogee argues that Plaintiff fails to state a claim because the alleged force was objectively reasonable. Oklahoma law applies the *Graham* factors, as well as four others, "in assessing what a reasonable police officer would do under the

circumstances." *Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dep't*, 2010 OK 9, ¶ 27 n. 48, 230 P.3d 869, 880 n.48. The *Morales* factors are:

> (1) the severity of the crime of which the arrestee is suspected; (2) whether the suspect poses an immediate threat to the safety of the officers or others, (3) whether the suspect is actively resisting arrest or attempting to evade arrest; (4) the known character of the arrestee; (5) the existence of alternative methods of accomplishing the arrest; (6) the physical size, strength and weaponry of the officers compared to those of the suspect; and (7) the exigency of the moment.

*Id.*, 2010 OK 9, ¶ 27 & n.47-48, 230 P.3d 869, 880 & n. 47-48 (noting this analysis is "like" the *Graham* analysis, but that "the ultimate inquiries differ" despite also relying on the totality of the circumstances). As noted above, the first two factors weigh in favor of Plaintiff, while the third goes slightly in favor of Muskogee. The Second Amended Complaint is void of allegations related to *Morales* factors four through six, while the seventh, the exigency of the moment, weighs in favor of Plaintiff.

Muskogee further argues that Plaintiff fails to describe the force used by "one or more officers," and is therefore insufficient factually. Additionally, Muskogee contends that Plaintiff is conclusory when she alleges that Watts's leg injuries were a direct and proximate result of the officers' use of force, as were the allegations that the takedown was excessive and unnecessary. The Court notes, however, that "the question of *proximate cause* is generally one of fact for the jury. It becomes one of law *only* when there is *no evidence* from which a jury could reasonably find a causal nexus between the act and the injury." *Gurich*, 2010 OK 56, ¶ 14, 238 P.3d 1, 4 (quoting *Jackson v. Jones,* 1995 OK 131, ¶ 8, 907 P.2d 1067, 1072-1073 (footnotes omitted)).

Plaintiff contends that she alleges a breach of the *Morales* standard of care, but the

Second Amended Complaint does not reflect this assertion. Her allegations do not even describe the specific duty alleged, *i.e.*, negligent performance of *which* law enforcement function, much less the parameters that were breached in failing to perform such duty. *See, e.g.*, *Morris for Estate of Morris v. Humphrey*, 2014 WL 12819407, at *4 (W.D. Okla. Nov. 12, 2014). Plaintiff's Second Amended Complaint therefore fails to state a claim.

**III. Leave to Amend.**

Plaintiff cursorily requests in her Response that, in the event dismissal is granted, she be given leave to amend her Second Amended Complaint yet again. "[C]ursory requests for leave to amend [as in this case] are insufficient." *Bangerter v. Roach*, 467 Fed. Appx. 787, 789 (10th Cir. 2012) (citation omitted). "A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason[.]" *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 562 (10th Cir. 1997).

On November 10, 2025, Plaintiff first amended the original Complaint before serving the original defendants. Following the filing of motions to dismiss by Defendants Wagoner Sheriff and STFM, the Court invited Plaintiff to amend her Complaint again. She did so on March 25, 2026, adding numerous claims and parties. This case has been pending for a year already, and Plaintiff has been given multiple opportunities to amend. *See* *Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend may be denied for, *inter alia*, "repeated failure to cure deficiencies by amendments previously allowed[.]"). However, given that the Second Amended Complaint was Plaintiff's first articulation of these two claims against Muskogee, the Court grants leave for Plaintiff to file a *Motion* for Leave to

Amended the Second Amended Complaint within 14 days. Any such motion will set forth the grounds for relief, and any amendment shall be limited to sufficiently supporting the claims and facts already alleged against Defendant Muskogee *only*, as to Counts Six and Seven only. Plaintiff may remove claims and/or any party, but may not raise additional claims or name a new party. Additionally, any motion for leave should have as exhibits: (1) a proposed Third Amended Complaint, and (2) a redline, or comparative, version demonstrating all deletions and additions.

## IV. CONCLUSION

Accordingly, Defendant City of Muskogee's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 55] is hereby GRANTED, except that Plaintiff may file a motion for leave to amend the Second Amended Complaint, within the limitations and parameters set forth above, within 14 days, but no later than Wednesday, November 4, 2026.

**IT IS SO ORDERED** this 21st day of October, 2026.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**