**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TAMMY THOMAS, as Next Friend of Benny Watts,** | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. CIV-25-366-GLJ** |
| **CHRIS ELLIOTT, Official capacity as Sheriff of Wagoner County, Oklahoma; SAINT FRANCIS HOSPITAL MUSKOGEE, INC.; CITY OF MUSKOGEE; WAGONER HOSPITAL AUTHORITY; and ANDY SIMMONS,** | ) | |
| **Defendants.** | ) | |

**ORDER**

This case comes before the Court on motions for partial and/or total dismissal by all remaining Defendants in this case. Plaintiff Tammy Thomas, the daughter and court-appointed guardian of her father Benny Watts, sues, *inter alia*, the Wagoner Hospital Authority, also referred to as Wagoner Community Hospital ("WCH"), alleging a state law claim for negligent medical care and/or hospital discharge in violation of the Oklahoma Governmental Tort Claims Act ("OGTCA"). WCH moves to dismiss this claim. For the reasons set forth below, the Court finds that Defendant Wagoner Hospital Authority D/B/A Wagoner Community Hospital's Partial Motion to Dismiss [Docket No. 58] is GRANTED.

## I. Procedural History

Plaintiff first filed this action on October 15, 2025, against Chris Elliott, in his

official capacity as Sheriff of Wagoner County, Oklahoma ("Wagoner Sheriff"). Docket No. 2. Prior to issuing service, Plaintiff filed an Amended Complaint, against the Wagoner Sheriff and Saint Francis Hospital, Muskogee, Inc., in Muskogee, Oklahoma ("STFM"). Docket No. 6. On March 17, 2026, the parties consented to Magistrate Judge jurisdiction in this case. Docket No. 31, 28 U.S.C. § 636(c)(1), & Fed. R. Civ. P. 73(a). Both Defendants moved to dismiss the claims against them. Docket Nos. 13, 22. On March 16, 2026, the Court invited Plaintiff to file a Second Amended Complaint, and she did so on March 25, 2026. Docket Nos. 34-35. Plaintiff's Second Amended Complaint named the Wagoner Sheriff and STFM, as well as The City of Muskogee ("Muskogee), the Oklahoma Department of Mental Health and Substance Abuse Services ("OKDMH"), WCH, and Andy Simmons, in his official capacity as Sheriff of Muskogee County, Oklahoma ("Muskogee Sheriff"). All Defendants consented, *see* Docket No. 83, and moved to dismiss. Docket Nos. 37, 38, 55, 58, 61, & 69. On June 18, 2026, Plaintiff dismissed OKDMH, and this Court denied OKDMH's motion to dismiss as moot. Docket Nos. 72-73. The motions by all remaining Defendants remain.

Plaintiff alleges eleven causes of action in her Second Amended Complaint, but only ten remain because Count 9 as to OKDMH was dismissed (Docket No. 72): (1) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to adequate medical care based on a systemic deficiency, as to Wagoner Sheriff; (2) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to adequate medical care based on final policymaker liability, as to Wagoner Sheriff; (3) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to adequate medical

care based on direct liability, as to Wagoner Sheriff; (4) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to adequate medical care based on indirect liability, as to Wagoner Sheriff; (5) common law negligence claims based on respondeat superior as to STFM; (6) negligent performance of a police function/excessive force in violation of the OGTCA, as to the City of Muskogee; (7) § 1983 violation of the Fourth and Fourteenth Amendments based municipal liability claim under *Monell*[1] as to the City of Muskogee for excessive force and failure to train; (8) negligent medical care and hospital discharge in violation of the OGTCA, as to **WCH**; (10) § 1983 claim for violation of the Fourteenth Amendment based on deliberate indifference to serious medical needs pursuant to final policymaker, systemic deficiency, and affirmative policy liability, as to the Muskogee Sheriff; and (11) (pleading in the alternative to Count 5) negligent performance of a law enforcement function in violation of the OGTCA, as to Wagoner Sheriff. All parties now move to dismiss some or all of the claims against them. In this Order, the Court addresses Plaintiff's claim against WCH.

## II. Complaint Allegations

Plaintiff asserts the following allegations on behalf of her father, Mr. Watts, an incapacitated person with a diagnosis of schizophrenia. Docket No. 35, p. 1, ¶ 1. Watts was in custody at the Wagoner County Detention Center ("WCDC") from December 30, 2023, through October 6, 2025. During that time, she alleges, *inter alia*, that his type 2 diabetes and mental health condition of schizophrenia largely went untreated except for

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

when they became "life threatening." On February 1, 2024, WCDC officers transferred Watts to WCH because his blood pressure and heart rate appeared to be "life-threatening." Docket No. 35, pp. 4-5, ¶¶ 12-25. At WCH, Watts was diagnosed with an upper respiratory infection, leukocytosis sepsis, type 2 diabetes, and tachycardia; medical staff treated him with intravenous antibiotics and hydration, but Watts refused admission. Staff discharged him with orders to resume his home medications and prescriptions for additional medications. *Id.*, p. 5, ¶ 26-27. Although WCDC documented receipt of the plan, there is no record that medications were administered as ordered. *Id.*, p. 6, ¶¶ 28-29.

On August 29, 2024, Watts was found in his cell, unresponsive to verbal pain and stimuli, with a blood glucose of 91 mg/dL and blood pressure of 160/82 mmHg. Jailers transferred him to WCH, where he was diagnosed with lethargy and returned to the jail with discharge orders to continue routine care and recheck if problems developed. *Id.*, p. 7, ¶¶ 37-39.

On June 11, 2025, a court authorized involuntary medical intervention for Watts's emergent psychiatric condition and physical health deterioration. On that day he was transported to, then discharged from, WCH, with discharge diagnoses of dementia with mild cognitive impairment, agitation, and hyperglycemia. Discharge papers ordered follow up, a regular diet, and continuation of his medications. *Id.*, p. 11, ¶¶ 81-84.

Toward the end of Watts's stay at the WCDC, he developed decubitus ulcers, and Plaintiff alleges that Wagoner County, through the Wagoner County Sheriff's Office and management of the WCDC, allowed his condition to worsen to justify releasing him on his own recognizance. Docket No. 35, pp. 4-13, ¶¶ 12-102. According to Plaintiff, this

happened on October 6, 2025, at which time the County obtained an order releasing Watts on his own recognizance, which states, "released on OR for transport to [STFM] to medically treat and find long term housing – if [STFM] release [Watts] from care, [Watts] to be returned to WCJ – [Watts is not] to be released to street." *Id.*, p. 13, ¶¶ 103-104. Based on this, Watts was transported to STFM. Plaintiff alleges that on October 7, 2025, STFM did release Watts to the street and/or failed to take reasonable measures to coordinate his transfer back into WCSO custody, including failing to advise WCSO of his impending release.

Records reflect that following his release Watts stopped to sleep in a yard and was observed littering, so Muskogee police officers approached him while he was not capable of understanding the officers or why they were following him. Plaintiff alleges Watts was frightened of the officers and they attempted to grab Watts, who pulled away and refused to comply. Accordingly, they took him to the ground, resulting in a hip fracture. *Id.*, p. 16-17, 19 ¶¶ 130-141, 159-162.

## III. Legal Standards

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) "generally take[s] one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). When jurisdiction is challenged through a facial attack, the Court considers the allegations in the complaint to be true. *Id.* When jurisdiction is challenged through a factual attack, the Court "may not presume the truthfulness of the complaint's

factual allegations" and "has wide discretion" to consider documentary and testimonial evidence. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995), *abrogated in part on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425 (2001)); *see also Ratheal v. United States*, 2021 WL 3619902, at *3 (10th Cir. Aug. 16, 2021) ("[W]hether a motion to dismiss must be converted to a motion for summary judgment depends on whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.") (quotation omitted). Either way, the burden of establishing subject matter jurisdiction is on the party asserting it; here, that is Plaintiff. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015).

## IV. Analysis

Plaintiff alleges in her Second Amended Complaint that WCH provided negligent medical care in relation to the formulation of discharge plans as to Watts, and that WCH breached its duty of care of Watts on (i) February 2, 2024, because he was discharged without an adequate discharge plan or assurances that his prescribed medications would be administered; (ii) August 29, 2024, because he was discharged without reasonable measures to ensure his plan would be implemented; and (iii) June 11, 2025, because he was discharged without reasonable measures to ensure his plan would be implemented. Docket No. 35, pp. 23-24, ¶¶ 182-183. Plaintiff alleges these were the direct and proximate cause of the worsening of Watts's conditions and the damages he suffered. WCH asserts this Court lacks jurisdiction over the February 2024 and August 2024 encounters, and therefore moves for partial dismissal as to those encounters, but not as to the June 2025 encounter.

WCH asserts that Plaintiff failed to provide notice of the February 2024 and August 2024 encounters as required under the OGTCA, and that this court therefore lacks jurisdiction over claims related to these two encounters. In support, WCH attaches a Notice of Tort Claim by Plaintiff in which the "Date of Claim" is cited as "June 2025." Docket No. 58, Ex. 4. WCH likewise asserts that extrinsic evidence is not precluded here and does not convert its motion to one for summary judgment but argues that summary judgment should likewise be granted if the motion is nevertheless converted. Furthermore, WCH argues that nothing in Plaintiff's notice put them on notice that Plaintiff was raising claims for any other encounters. Plaintiff responds that her theory is one of indivisible, progressively worsening harm, which culminated in Watts's deterioration in 2025, not a series of independently completed losses. Plaintiff further asserts that WCH's reliance on matters outside the pleadings requires conversion to summary judgment, which is premature.

WCH first contends this court lacks subject matter jurisdiction over the February 2024 discharge and the August 2024 discharge because Plaintiff did not provide a proper tort claim notice under the OGTCA as to these two incidents.[2]

> A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction can take two forms: a facial or a factual attack. A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction. By contrast, [a] factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction. And when faced with a factual attack on subject-matter jurisdiction, the district court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. The district court's exercise

[2] WCH does not challenge Plaintiff's allegation that WCH is a public trust hospital and considered a political subdivision under the OGTCA. Docket No. 34, p. 3, ¶ 6.

> of such discretion does not convert a Rule 12(b)(1) motion into a summary[-]judgment motion unless resolution of the jurisdictional question is intertwined with the merits[.]

*Grace Bible Fellowship v. Polis*, 2024 WL 1340201, at *2 (10th Cir. Mar. 29, 2024) (internal citations and quotations omitted). WCH raises a factual attack on subject-matter jurisdiction, and attaches to its motion Plaintiff's Notice of Tort claim submitted to WCH. The notice identifies the date of claim as "June 2025," and the circumstances describe, *inter alia*, "On June 11, 2025, Mr. Watts was in the custody of the ["WCSO", and] had materially deteriorated during his time at the ["WCDC."] During this encounter at the hospital, staff cleared Mr. Watts for return to the jail despite clear evidence that environment was detrimental to his care. . . ." Docket No. 58, Ex. 4, p. 1. In light of the factual attack on subject matter jurisdiction, the Court may therefore consider this Notice and its contents without converting WCH's motion to one for summary judgment as the information may be considered divorced from any merits determination. Upon review, the Notice provides no indication that any encounter other than the June 2025 encounter would be implicated or considered as part of this claim.

Oklahoma law requires notice of a claim under the OGTCA to be presented within one year of the date of loss, and a suit following denial of a claim within 180 days after any denial. *See* 51 Okla. Stat. §§ 156-157. The Notice is dated November 7, 2025. Docket No. 58, Ex. 4, p. 1. Both the February 2024 discharge and the August 2024 discharge fall outside that time frame even had they been identified in the Notice. Plaintiff contends, however, that Count 8 is alleging a single count of negligent medical care and hospital discharge because the earlier dates are describing "a continuing, progressively worsening

injury whose culminating loss fell within the notice period." Docket No. 71, p. 3. The Second Amended Complaint, however, describes and refers to "breaches" in the plural rather an one continuous breach. Even if such a continuing injury were a permissible claim,[3] Plaintiff does not properly plead one here. Nothing in either Plaintiff's Notice or the Second Amended Complaint alleges a continuing, progressively worsening injury *due to* a series of three hospital discharges over a period of sixteen months. The Court agrees that Plaintiff describes a sprawling, lengthy course of conduct beginning in December 2023. And while Plaintiff's Notice did indicate Watts had been in *WCDC* custody since December 2023, Watts's experience in relation to the *Wagoner Sheriff and the WCDC* does not inform a factual course of conduct related to *WCH* where the Notice does not allege encounters previous to June 2025. Given the number of parties and claims at issue for the entire time period, Plaintiff's description of the course of events in the Second Amended Complaint is insufficient to infer a continuing course of conduct against any specific Defendant without explicitly pleading so. Plaintiff failed to meet the notice requirement as to the first two encounters, and this Court therefore lacks subject matter jurisdiction over any claim implicating either the February 2024 discharge and/or the August 2024 discharge.

## I. CONCLUSION

Accordingly, Defendant Wagoner Hospital Authority D/B/A Wagoner Community

---

[3] The Court offers no opinion as to whether, if properly noticed and pled, three separate hospital visits/discharges over the course of sixteen months could constitute a claim of a continuous, progressively worsening injury.

Hospital's Partial Motion to Dismiss [Docket No. 58] is hereby GRANTED with respect to the Count 8 allegations related to the February 2024 discharge and the August 2024 discharge from WCH. Plaintiff's claim with regard to the June 2025 hospital discharge remains pending.

**IT IS SO ORDERED** this 21st day of October, 2026.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**