**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TAMMY THOMAS, as Next Friend of Benny Watts,** | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. CIV-25-366-GLJ** |
| **CHRIS ELLIOTT, Official capacity as Sheriff of Wagoner County, Oklahoma; SAINT FRANCIS HOSPITAL MUSKOGEE, INC.; CITY OF MUSKOGEE; WAGONER HOSPITAL AUTHORITY; and ANDY SIMMONS,** | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on motions for partial and/or total dismissal by all remaining Defendants in this case. Plaintiff Tammy Thomas, the daughter and court-appointed guardian of her father Benny Watts, sues, *inter alia*, Andy Simmons in his official capacity as Sheriff of Muskogee County, Oklahoma ("Muskogee Sheriff"), alleging a Fourteenth Amendment violation pursuant to 42 U.S.C. § 1983, arising out of his period of detainment at the Muskogee County Detention Center ("MCDC"). Muskogee Sheriff moves to dismiss Plaintiff's claim against him. For the reasons set forth below, the Court finds that the Motion to Dismiss Muskogee County Sheriff Andy Simmons and Brief in Support [Docket No. 69] is DENIED.

## I. Procedural History

Plaintiff first filed this action on October 15, 2025, against Christ Elliott in his official capacity as Sheriff of Wagoner County, Oklahoma ("Wagoner Sheriff"). Docket No. 2. Prior to issuing service, Plaintiff filed an Amended Complaint, against Wagoner Sheriff and Saint Francis Hospital, Muskogee, Inc., in Muskogee, Oklahoma ("STFM"). Docket No. 6. On March 17, 2026, the parties consented to Magistrate Judge jurisdiction in this case. Docket No. 31, 28 U.S.C. § 636(c)(1), & Fed. R. Civ. P. 73(a). Both Defendants moved to dismiss the claims against them. Docket Nos. 13, 22. On March 16, 2026, the Court invited Plaintiff to file a Second Amended Complaint, and she did so on March 25, 2026. Docket Nos. 34-35. Plaintiff's Second Amended Complaint named the Wagoner Sheriff and STFM, as well as The City of Muskogee ("Muskogee), the Oklahoma Department of Mental Health and Substance Abuse Services ("OKDMH") the Wagoner Hospital Authority d/b/a Wagoner Community Hospital ("WCH"), and Andy Simmons, in his official capacity as Sheriff of Muskogee County, Oklahoma ("Muskogee Sheriff"). All Defendants moved to dismiss. Docket Nos. 37, 38, 55, 58, 61, & 69. On June 18, 2026, Plaintiff dismissed OKDMH, and this Court denied OKDMH's motion to dismiss as moot. Docket Nos. 72-73. The motions by all remaining Defendants remain.

Plaintiff alleges eleven causes of action in her Second Amended Complaint, but only ten remain because Count 9 as to OKDMH was dismissed (Docket No. 72): (1) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to adequate medical care based on a systemic deficiency, as to Wagoner Sheriff; (2) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to adequate

medical care based on final policymaker liability, as to Wagoner Sheriff; (3) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to adequate medical care based on direct liability, as to Wagoner Sheriff; (4) § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment to adequate medical care based on indirect liability, as to Wagoner Sheriff; (5) common law negligence claims based on respondeat superior as to STFM; (6) negligent performance of a police function/excessive force in violation of the Oklahoma Governmental Tort Claims Act ("OGTCA"), as to the City of Muskogee; (7) § 1983 violation of the Fourth and Fourteenth Amendments based municipal liability claim under *Monell*[1] as to the City of Muskogee for excessive force and failure to train; (8) negligent medical care and hospital discharge in violation of the OGTCA, as to WCH; (10) § 1983 claim for violation of the Fourteenth Amendment based on deliberate indifference to serious medical needs pursuant to final policymaker, systemic deficiency, and affirmative policy liability, as to **Muskogee Sheriff**; and (11) (pleading in the alternative to Count 5) negligent performance of a law enforcement function in violation of the OGTCA, as to Wagoner Sheriff. All parties remaining parties have now consented, *see* Docket No. 83, and move to dismiss some or all of the claims against them. In this Order, the Court addresses the claims as to the Wagoner Sheriff, Elliott in his official capacity.

## II. Complaint Allegations

Plaintiff asserts the following allegations on behalf of her father, Mr. Watts, an

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

incapacitated person with a diagnosis of schizophrenia. Docket No. 35, p. 1, ¶ 1. Watts was in custody at the Wagoner County Detention Center ("WCDC") from December 30, 2023, through October 6, 2025. During that time, she alleges, *inter alia*, that Watts's type 2 diabetes and mental health condition of schizophrenia largely went untreated except for when they became "life threatening." Toward the end of Watts's stay at the WCDC, he developed decubitus ulcers, and Wagoner County, through the Wagoner County Sheriff's Office and management of the WCDC, allowed his condition to worsen to justify releasing him on his own recognizance. Docket No. 35, pp. 4-13, ¶¶ 12-102.

According to Plaintiff, this happened on October 6, 2025, at which time the County obtained an order releasing Watts on his own recognizance, which states, "released on OR for transport to [STFM] to medically treat and find long term housing – if [STFM] release [Watts] from care, [Watts] to be returned to WCJ – [Watts is not] to be released to street." *Id.*, p. 13, ¶¶ 103-104. Based on this, Watts was transported to STFM. Plaintiff alleges that on October 7, 2025, STFM did release Watts to the street and/or failed to take reasonable measure to coordinate his transfer back into WCSO custody, including failing to advise WCSO of his impending release.

Records reflect that, following his release, Watts stopped to sleep in a yard and was observed littering, so Muskogee police officers approached him while he was not capable of understanding the officers or why they were following him. Plaintiff alleges Watts was frightened of the officers and they attempted to grab Watts, who pulled away and refused to comply. Accordingly, they took him to the ground, resulting in a hip fracture. *Id.*, p. 16-17, 19 ¶¶ 130-141, 159-162. Watts was transported and booked into the Muskogee

County Detention Center ("MCDC") on charges of littering, resisting, and disorderly conduct. *Id.*, p. 17, ¶ 144.

Plaintiff alleges that, when presented for booking at MCDC, Watts was unable to walk, incoherent, and in substantial pain, and that the booking officers were aware of his ongoing leg pain. *Id.*, p. 17-18, ¶¶ 146-149. Plaintiff alleges that booking officers should have escalated his care to an appropriate medical provider, but they either did not refer him to one or a provider failed to reasonably respond to his medical needs, and that these actions or failures to act were motivated by official policies or unwritten practices of Muskogee County. Plaintiff also alleges Muskogee County has "adopted, enforced, ratified, and maintained a booking practice to disregard serious medical needs of arrestees by delaying care until the person is discharged," which results in substantial pain suffered by arrestees, including Watts. *Id.*, pp. , ¶¶ 150-154.

Plaintiff alleges that Watts appeared at his arraignment in a wheelchair and that an unknown person forged his signature indicating that he was pleading guilty to the charges, alleging that Watts himself was incompetent to plead to any charges or understand the nature of the charges against him. Ultimately, Plaintiff alleges Watts never received medical care while at MCDC, and that he was released for "time served" then transported back to STFM where he was assessed then transferred to St. Francis in Tulsa, Oklahoma, for treatment of his hip fracture. *Id.*, pp. 18-19, ¶¶ 155-162. These events as summarized relate to Plaintiff's Count 10 as to Muskogee Sheriff.

## III. Legal Standards

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557, 570 (2007)). Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555 (2007)); *see generally* Fed. R. Civ. P. 8(a)(2) (complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]").

"While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in h[is] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Thus, the appropriate inquiry is "'whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.'" *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement[.]" *Iqbal*, 556 U.S. at 678.

**IV. Analysis**

Muskogee Sheriff asserts Plaintiff fails to state a plausible claim for relief as to his

§ 1983 claim. The heading for Count 10 states, "Final Policymaker/Systemic Deficiency/Affirmative Policy." Docket No. 35, p. 25, Claim 10. Plaintiff alleges in the Second Amended Complaint that Muskogee Sheriff failed to respond reasonably to Watts's objectively serious medical needs during his time at the MCDC, which was the product of either an official policy or an unofficial but well-settled custom of delaying or deferring medical care for arrestees until discharge, for the purposes of shifting the financial responsibility to others. Plaintiff alleges this was done with deliberate indifference to the constitutional rights of pretrial detainees, and was the moving force behind Watts's injuries and damages. Docket No. 35, p. 25, ¶ 188.

As an initial note, the Supreme Court has long stated that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" such that "local government officials sued in their official capacities are 'persons' under § 1983 in those cases in which, as here, a local government would be suable in its own name." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n. 55 (1978). Furthermore, for purposes of § 1983 and under 19 Okla. Stat. § 4, "Suit may be brought against a county by naming a county officer identified in Section 161 of this title when it is alleged that such officer in his or her official capacity is directly or vicariously liable to plaintiff in an action not arising out of contract." *See also* 19 Okla. Stat. § 161 (defining "county officer" as "the county clerk, county commissioner, county assessor, district court clerk, county treasurer and county sheriff"). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v.*

*Graham*, 473 U.S. 159, 166 (1985). Accordingly, Muskogee Sheriff is an appropriate party in this case.

Muskogee Sheriff argues Plaintiff fails to allege an underlying constitutional violation by any of Muskogee County's employees because the broad allegations of leg pain are insufficient to establish a sufficiently serious harm. Additionally, he contends no MCDC employee was specifically alleged to have been aware of a substantial risk of serious harm to Watts, and that her general allegations are insufficient and conclusory. Furthermore, Muskogee Sheriff asserts Plaintiff fails to adequately identify an unconstitutional policy or custom outside of conclusory claims, including failing to identify any previous incidents to help establish that the alleged custom was so well established as to constitute custom and usage. Thus, Muskogee Sheriff contends there are nothing but conclusory allegations that an MCDC policy was the moving force behind Watts's injuries. Muskogee Sheriff extends this argument to any allegation of systemic deficiencies, which he asserts Plaintiff alleges without supporting facts showing the MCDC maintained deficient or inadequate medical care. He therefore contends that a failure to identify specific deficiencies is fatal to the claim. Finally, Muskogee Sheriff contends he was not on notice of any alleged constitutional violations, nor how his policies were the moving force behind Watts's injuries.

Plaintiff responds that the Complaint allegations are more than "leg pain," and include incoherence, inability to walk, pain, and that these were known to the booking officers. Additionally, she alleges Watts required a wheelchair, and that he never received any medical or mental health treatment while at MCDC. Plaintiff contends a hip fracture

is an objectively serious medical need and that his substantial pain alone was sufficient. Plaintiff contends that she is not required to identify individual employees, especially prior to discovery, for her official-capacity claim, and that the Second Amended Complaint sufficiently alleges gatekeeper liability. Plaintiff reaffirms that she is bringing only a claim regarding an affirmative policy, and not for failure to train or supervise. Plaintiff again agrees that she does not allege a pattern of prior incidents because she argues the deprivation alleged was a plainly obvious consequence of the MCDC policies amounting to a systemic deficiency.

In reply, Muskogee Sheriff asserts that Plaintiff does not alleged facts showing that an MCDC employee was aware of or should have been aware of his hip fracture injury based on complaints of leg pain, and that Plaintiff fails to identify which employees were aware of it. Further, Muskogee Sheriff contends that Plaintiff fails to plausibly allege municipal liability given the inadequate support for any alleged policy or custom, and inadequate allegations of systemic failures.

For this claim, Plaintiff must show Muskogee Sheriff had final policymaking authority and that Muskogee Sheriff's decisions (or ratification of a subordinate's decisions) were the moving force behind Watts's constitutional injury at MCDC. *See Hinkle v. Beckham Cty. Bd. Of Cty. Comm'rs*, 962 F.3d 1204, 1239-1240 (10th Cir. 2020). "The judge, not the jury, should determine who exercises final policymaking authority in a municipality." *Milligan-Hitt v. Bd. of Trs. of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1224 (10th Cir. 2008) (citing *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 736-738 (1989)). Importantly, the identity of those final policymakers whose conduct can create

municipal liability is "'a question of *state law*,'" such that "the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury." *Jett*, 491 U.S. at 737; *see also Ware v. Unified Sch. Dist. No. 492, Butler Cty.*, *State of Kan.*, 902 F.2d 815, 819 (10th Cir. 1990) (using Kansas law to assess whether the school board delegated final policymaking authority to Ware, finding "the board has not conceded the delegation of its authority, no provision of law arguably vested Geil with final authority, and his decision was subject to review by the board."). "Under Oklahoma law, the sheriff is the final policymaker for a county jail." *Harden v. Hedgecock*, 181 F.4th 1094, 1101 (10th Cir. 2026) (citation omitted); *see also Whitson v. Bd. of Cnty. Commissioners of Cnty. of Sedgwick*, 106 F.4th 1063, 1071-1072 (10th Cir. 2024) ("In this circumstance, we see no escape from the conclusion that Sheriff Hanna possessed final authority to establish municipal policy *with respect to the action ordered*. Indeed, he had not only the authority, but the responsibility, to set policy with respect to the treatment of prisoners in his custody.") (internal quotation omitted). Nevertheless, the alleged "the conduct must be 'fairly attributable to the municipality.'" *Whitson*, 106 F.4th at 1072 ("In other words, when the policymaker is the alter ego of the municipality, liability is appropriate, regardless of the miscreant's motives or whether the conduct was within the scope of employment. The Supreme Court has recognized this narrow basis of liability outside of respondeat superior.") (quoting *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1287 (10th Cir. 2007)).

The remaining issue, therefore, is whether Plaintiff sufficiently alleges that

Muskogee Sheriff's decisions (or ratification of a subordinate's decisions) were the moving force behind Watts's constitutional injury. Muskogee Sheriff asserts that Plaintiff's claim for final policymaker liability is not supported by specific, nonconclusory allegations of fact and is devoid of any non-conclusory allegation that Muskogee Sheriff either had any personal involvement in any decisions regarding medical or mental healthcare for Watts or subjective awareness that the medical staff were not providing adequate care to Watts.

Plaintiff alleges in the Second Amended Complaint that Muskogee Sheriff is a final policymaker over jail operations and solely responsible for the operation of the WCSO, including "promulgating, creating, implementing and possessing responsibility for all operations and the WCDC, supervision, policies, practices, staffing, and training." Docket No. 35, p. 3, ¶ 7. For this claim, a single decision by a county's final policymaker may subject the county to liability under 42 U.S.C. § 1983. *Bonner v. Lester*, 2011 WL 13078380, at *1 (W.D. Okla. Sept. 27, 2011) (citations omitted).

"To state a claim against a municipal entity in this context, plaintiffs must allege facts showing: (1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1184 (10th Cir. 2020). *Accord Estate of Burgaz ex rel. Zommer v. Bd. of Cnty. Comm'rs*, 30 F.4th 1181, 1189 (10th Cir. 2022); *Arnold v. City of Olathe, Kansas*, 35 F.4th 778, 795 (10th Cir. 2022) ("To prove municipal liability under § 1983, the plaintiff must show: (1) a municipality enacted or maintained a policy, (2) the municipality was deliberately indifferent to the resulting constitutional violations, and (3) the policy caused the underlying constitutional violation.) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir.

2013)). In Count 10, Plaintiff alleges deliberate indifference to a serious medical need based on an explicit or implied policy of delaying or deferring care for arrestees with serious medical needs at booking until the arrestee is discharged, in order to avoid financial responsibility for these pretrial detainees including Watts.

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotations omitted); *accord Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019).

A plaintiff may hold a municipality liable for actions by a person with "final policymaking authority[.]" *Whitson*, 106 F.4th at 1067 ("[W]hen an official takes action over which he or she has final policymaking authority, the policymaker *is* the municipality, so it is fair to impose liability on that entity for that action." (emphasis in original)). This can take two forms, (i) a challenge to a facially unlawful policy, or (ii) a challenge that a facially lawful policy led to a violation of constitutional rights. Though perhaps a close call, the Court finds Plaintiff fails to state a claim under either application, although Plaintiff should take pains moving forward to make clear the basis for her arguments.

Where a plaintiff alleges that a policy is facially unconstitutional, "'issues of fault and causation'" are ordinarily "'straightforward.'" *Hinkle*, 962 F.3d at 1240 (quoting *Bd.*

*of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)); *see also Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) ("[W]hen an official municipal policy itself violates federal law, issues of culpability and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question."). "A county's sanctioning of a facially unlawful policy establishes that it was the moving force behind the injury of which the plaintiff complains." *Hinkle*, 962 F.3d at 1240 (quotation omitted); *see also Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) ("Where an official policy or practice is unconstitutional on its face, it necessarily follows that a policymaker was not only aware of the specific policy, but was also aware that a constitutional violation will most likely occur."). Plaintiff alleges a facially unconstitutional policy when she asserts Muskogee Sheriff has "has adopted, enforced, ratified and maintained a booking practice to disregard serious medical needs of arrestees by delaying care until the person is discharged," and that the booking officers failed to elevate Watts's care of refer him to a medical provider when he was booked in to MCDC incoherent, in pain, and unable to walk. Docket No. 35, pp. 17-18, ¶¶ 146-153. *See Brown*, 520 U.S. at 405 ("proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably."). Because Plaintiff contends in a facial challenge that "'the law or policy at issue is unconstitutional in all its applications,'" *Hinkle*, 962 F.3d at 1240 (quoting *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019)), the deliberate indifference standard undergirding that argument does not apply to the above-described facial challenges and Plaintiff has sufficiently stated a claim for relief.

Defendant devotes much time to asserting that Plaintiff fails to allege a specific constitutional violation committed against Watts in more than conclusory terms, which *does* apply to any challenge to a facially lawful policy that nevertheless led to a violation of Watts's rights. In that case, "a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Hinkle*, 962 F.3d 1204, 1241 (10th Cir. 2020) (quoting *Brown*, 520 U.S. at 407, (quoting *Canton*, 489 U.S. at 388)). Causation is fairly clearly alleged in that Plaintiff alleges that the challenged policy directs jailers to process detainees without providing any needed medical care. The state of mind, or deliberate indifference, standard "'is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action[.]'" *Waller*, 932 F.3d at 1284 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney*, 143 F.3d at 1307. "While typically notice is established by proving the existence of a pattern of tortious conduct, it can also be established in a narrow range of circumstances where a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Hinkle*, 962 F.3d at 1241 (internal quotation marks omitted) (quoting *Waller*, 932 F.3d at 1284); *see also George, on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Commissioners*, 32 F.4th 1246, 1254 (10th Cir. 2022)

("deliberate indifference ordinarily requires showing a pattern of similar instances."); *Arnold v. City of Olathe, Kansas*, 35 F.4th 778, 795 (10th Cir. 2022 ("Notice can be established by proving the existence of a pattern of constitutional violations or, in a narrow range of circumstances, if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.") (quotation omitted).

Plaintiff provides no pattern of constitutional violations in her Second Amended Complaint, and therefore must rely on the "narrow range of circumstances" to assert that denial of medical care to an inmate's serious medical needs, a constitutional violation, is a highly predictable and/or plainly obvious consequence of a policy by which detainees are not provided medical care at booking.[2] "A local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Burke v. Regalado*, 935 F.3d 960, 997-998 (10th Cir. 2019) (brackets and internal quotation marks omitted). Plaintiff's Second Amended Complaint meets this standard at this stage of the case.

## I. CONCLUSION

Accordingly, the Motion to Dismiss Muskogee County Sheriff Andy Simmons and

[2] Deliberate indifference . . . is defined differently for Eighth Amendment and municipal liability purposes. . . . In the municipal liability context, deliberate indifference is an objective standard which is satisfied if the risk is so obvious that the official should have known of it." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 n.5 (10th Cir. 1998); *Buchanan v. Turn Key Health Clinics, LLC*, 2023 WL 6997404, at *8 (10th Cir. Oct. 24, 2023) (same); *see also George , on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Commissioners*, 32 F.4th 1246, 1258 n.3 (10th Cir. 2022) (distinguishing municipal liability deliberate indifference from prison conditions context, stating, "We do not equate the two deliberate-indifference standards here.").

Brief in Support [Docket No. 69] is hereby DENIED.

**IT IS SO ORDERED** this 21st day of October, 2026.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**